UNITED STATES of America, Appellee,

v.

Calvin W. BREIT, Appellant.

No. 82–5309.

United States Court of Appeals,
Fourth Circuit.

Argued May 13, 1983.

Decided July 12, 1983.

Aubrey M. Daniel, III, Washington, D.C. (Trevor W. Swett, III, Williams & Connolly, Washington, D.C., Theodore Krieger, New York City, on brief), for appellant.

William G. Otis, Sp. Asst. U.S. Atty., Patricia A. Kerwin, Asst. U.S. Atty., Richmond, Va. (Elsie L. Munsell, U.S. Atty., Marla L. Graff, Student Asst. to the U.S. Atty., Alexandria, Va., on brief), for appellee.

Before HALL and SPROUSE, Circuit Judges, and TURK,* Chief District Judge.

K.K. HALL, Circuit Judge:

Calvin W. Breit (Breit) appeals from his conviction by a jury of conspiracy in violation of 21 U.S.C. § 846 and two counts of possession of cocaine and aiding and abetting the possession of cocaine with intent to distribute in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). On appeal, Breit's primary contention is that the district court erred in denying his motion for a new trial where two jurors lied on *voir dire* by concealing familial involvement in criminal cases. Finding no error, we affirm.

I.

On August 6, 1982, Breit, a lawyer, was indicted, *inter alia,* on one count of conspiracy and six counts of possession of cocaine and aiding and abetting the possession of cocaine with intent to distribute. Approximately two weeks before trial, Breit was furnished with a list of the names of fifty-five to sixty prospective jurors. He had his son, William Breit (William), who was also a lawyer and in practice with his father, conduct an extensive investigation into the backgrounds of the prospective jurors, including information on each juror's neighborhood, economic status, spouse, spouse's occupation, plus a photograph of each juror's home.

At the pre-trial *voir dire* of prospective jurors, the district court asked whether any venireman or member of his immediate

---

* Honorable James C. Turk, Chief United States District Judge for the Western District of Virginia, sitting by designation.

family had been a witness or a defendant in a criminal case. Mildred Privott and Jean Allsbrook failed to disclose the criminal records of their sons, and Mrs. Privott concealed that she had been a criminal defendant. They were later selected as jurors.

On Friday, October 8, 1982, the jury convicted Breit of conspiracy and two possession counts. On October 13, 1982, Breit informed the district court for the first time of the jurors' misconduct and moved for a new trial. He claimed that on Saturday or Sunday after the verdict his law firm received an anonymous telephone call about Mrs. Allsbrook and that this call prompted a search of the Privott and Allsbrook names in court records from which it was apparent that Mrs. Privott and Mrs. Allsbrook had lied on *voir dire*.

On October 29, 1982, the district court held an evidentiary hearing on Breit's motion. The witnesses at the hearing included Breit's son and law partner, Jeffrey Breit (Jeffrey), attorney Thomas Shuttleworth (Shuttleworth), Thomas Collins (Collins), a private investigator, and Breit.

Jeffrey testified that before trial he reviewed the entire list of names of prospective jurors with his close friend Thomas Shuttleworth. Jeffrey acknowledged that Shuttleworth told him prior to trial he had represented Mrs. Privott or someone in her family and that he thought Mrs. Privott "wouldn't be a bad juror." He admitted he gleaned from this conversation "that either Mrs. Privott or someone in her family had been in trouble, criminal trouble." He testified he told his brother, William, only that Shuttleworth thought that Mrs. Privott "wouldn't be a bad juror." As to Mrs. Allsbrook, Jeffrey admitted that Collins approached him in the hall after the trial had started but before the jury returned its verdict, pointed out Mrs. Allsbrook and told him "I think one of her children has had some trouble."

Shuttleworth testified that prior to trial he told Jeffrey that he had represented Mildred Privott or her son and that he thought she would make "a very good juror." He stated he told Jeffrey that he

represented Mrs. Privott's son in a criminal matter in Florida. He further testified he "may very well have" told Jeffrey that the charge against Mrs. Privott's son was a triple murder.

Collins testified that during one of the trial recesses, he told Breit's chief defense counsel that if juror Allsbrook was the same Allsbrook he knew, then "one of her sons had been in trouble." Collins further testified that he told Jeffrey after a lunch recess that "one of [Mrs. Allsbrook's] sons had definitely been in trouble and been in and out of the penitentiary most of his life."

Breit denied that his son Jeffrey told him the information learned from Shuttleworth and Collins about the Privott and Allsbrook sons. However, Breit admitted he knew prior to the verdict that Mrs. Privott had been charged with her husband's homicide. He further testified that on the morning of trial or the night before, his son Jeffrey had told him that Shuttleworth had probably represented Mrs. Privott and thought that she would make a favorable juror.

The district court found that the evidence established "clearly and convincingly" that Breit knew before the verdict that Mrs. Privott and Mrs. Allsbrook had given false answers to the questions posed on *voir dire*. The court further held that Breit deliberately and knowingly elected not to bring this information to the court's attention and thereby waived any right to a new trial. We agree.

## II.

On appeal, Breit argues that the district court could not properly have found a waiver unless the evidence showed knowing silence beyond a reasonable doubt and that, under any standard, the court was clearly erroneous in finding that he knew during the trial that Mrs. Privott and Mrs. Allsbrook had lied about the criminal involvement of their sons.

In *Gray v. Hutto*, 648 F.2d 210 (4th Cir. 1981), we held that the defendant had waived his right to a new trial where he

learned of alleged juror misconduct while the case was still in progress but delayed bringing the matter to the attention of the court until after the verdict. At the post-trial hearing in this case, the government conceded *arguendo* that Mrs. Privott and Mrs. Allsbrook were actually prejudiced against Breit. The issue at the post-trial hearing, therefore, was whether Breit knew before the verdict about the criminal record of the jurors' sons and thus knew that they had lied on *voir dire.* The resolution of this issue rested on a strictly factual determination not going to ultimate guilt or innocence.

In closely analogous circumstances, the Supreme Court has held that the proper standard for making such a factual determination is proof by a preponderance of the evidence. *See, e.g., United States v. Matlock,* 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242 (1974) (proof of consent to search is adequate if shown by a preponderance of the evidence); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (government must prove voluntariness of a confession at least by a preponderance of the evidence). In *United States v. Mastrangelo,* 693 F.2d 269 (2d Cir.1982), the Second Circuit held that the government was entitled to prove waiver of the defendant's right to confront his accusers by a preponderance of the evidence. The Second Circuit stated that:

> We see no reason to impose upon the government more than the usual burden of proof by a preponderance of the evidence where waiver by misconduct is concerned. Such a claim of waiver is not one which is either unusually subject to deception or disfavored by the law.... and there is hardly any reason to apply a burden of proof which might encourage behavior which strikes at the heart of the system of justice itself.

*Id.* at 273.

■ We agree with this assessment. A defendant who remains silent about known juror misconduct—who, in effect, takes out an insurance policy against an unfavorable verdict—is toying with the court. *Gray v. Hutto, supra* at 212. To hold the government to an exacting burden of proof of the defendant's knowledge—a matter by definition best known to the defendant and his acquaintances rather than the government—is effectively to invite that policy to be cashed in at high value and little risk to the defendant, but at great cost to the finality of verdicts and the integrity of the trial process. *See also United States v. Balano,* 618 F.2d 624, 628–29 (10th Cir. 1979), *cert. den.,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980). We conclude that the proper standard to resolve whether Breit knew before the verdict of the jurors' alleged misconduct is proof by a preponderance of the evidence. In this particular case, we further find that the evidence establishes beyond a reasonable doubt that Breit knew before the verdict the critical information about Mrs. Privott's son and Mrs. Allsbrook's son in criminal activity.

### III.

■ Breit next contends that, under any standard, the district court's finding that he knew during trial of the jurors' misconduct is clearly erroneous. He argues that because Jeffrey was not present at the jury *voir dire,* he would not have realized the significance of the information given him by Shuttleworth and Collins and, therefore, would not have been likely to pass it on to his father or other members of the defense team.[1] We do not agree. The district court, having presided at the proceedings, was fully aware that Jeffrey did not attend the *voir dire* and never intimated otherwise. The district court specifically found by clear and convincing evidence that Jeffrey would have recognized the information about the Privott and Allsbrook sons as highly signifi-

---

1. In addition, Breit argues that the district court placed undue emphasis on the fact that the Privott and Allsbrook sons were involved with drug-related offenses since there was "no testimony" that Jeffrey was told about the nature of those crimes. This argument lacks merit. Even if there were no such testimony, the district court's extensive analysis at the time of its decision did not turn in any significant degree on the nature of the offenses.

cant even if he knew nothing about the questions and answers given on *voir dire.* As the district court pointed out, Jeffrey was neither immature nor dull-witted. He was a member of his father's law firm and an attorney with several years' experience, some of it in criminal cases. At the same time his brother William was scouring the countryside to obtain detailed information on over fifty prospective jurors, Jeffrey was also reviewing the list of veniremen. This review included a conversation with his close friend, Shuttleworth, who told Jeffrey several days before jury selection that Mrs. Privott "would make a very good juror;" that he had "represented her son in a criminal matter in Florida;" and, possibly, that the charge against the son was a triple murder. To believe that Jeffrey did not transmit this information is, as the trial court aptly put it, "fantastic." The same reasons that make it impossible to believe that Jeffrey did not transmit the information about Privott also apply to the information about Allsbrook.

In making its factual findings, the district court relied substantially on its observation of the demeanor of father and son when they denied on the stand that such a transmittal occurred. A court of appeals will ordinarily accord great deference to the factual conclusions of the district court. *See United States v. Gooding,* 695 F.2d 78, 81–82 (4th Cir.1982). Nowhere is that deference more appropriate than where the lower court's conclusions are based, as they were here, on its first-hand observation of the witnesses' demeanor under questioning.

Given the abundant evidence supporting the district court's factual findings, we cannot say these findings are clearly erroneous. We conclude that by not bringing the jurors' misconduct to the attention of the trial court, Breit waived his right to a new trial.

## IV.

Breit's remaining contentions on appeal lack merit. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.