**Woodrow J. WILSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 94–CF–64.

District of Columbia Court of Appeals.

Argued March 8, 1995.
Decided Aug. 21, 1995.

Alan L. Balaran, Washington, DC, for appellant.

Gregory A. Gruber, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas C. Black and Nancy E. Smith, Assistant United States Attorneys, Washington, DC, were on the brief, for appellee.

Before FERREN, SCHWELB and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

Woodrow J. Wilson was convicted by a jury of unlawful distribution of cocaine, in violation of D.C.Code § 33–541(a)(1) (1989). On appeal, he contends that the trial judge abused her discretion by denying his motion for a new trial following the disclosure of improper conduct on the part of a juror. We affirm.

## I.

## THE TRIAL COURT PROCEEDINGS

### A. The Trial and Its Aftermath.

Wilson's trial began on Tuesday, October 19, 1993. Jury selection was completed on the following day. John R. Dugan, a practicing attorney who had previously been employed by the United States Attorney's office, was selected as a member of the jury. The judge instructed the jurors, at the commencement of the trial, that "you must not discuss this case with anyone during the trial, not even with each other." She repeated the substance of this directive on several occasions as the trial proceeded.

The prosecution rested on Friday, October 22, 1993, and the judge recessed the trial for the weekend. The defense case, the government's rebuttal, the closing arguments of counsel, and the judge's charge to the jury were all completed on the morning of Monday, October 25. The judge discharged the two alternates, and deliberations began at 12:50 p.m. on that day. The jury sent the judge a note at 4:37 p.m. advising her that a verdict had been reached. In open court, the jury returned a verdict of guilty.

On the following day, October 26, 1993, the prosecutor called the judge's chambers and reported that one of the jurors, specifically Dugan, had attempted to discuss the case with a member of her office, Assistant United States Attorney Patrick Rowan, during the course of the trial. The prosecutor stated that she had already passed on this information to Wilson's trial attorney. Shortly thereafter, defense counsel also contacted chambers and advised the judge that she had additional facts that she wished to provide to the court.

The trial judge convened a hearing on October 27, 1993. At that hearing, the prosecutor disclosed that Dugan had contacted Rowan over the weekend to inquire whether the government was required to call a chemist as a witness in order to prove that the substance allegedly distributed by Wilson was cocaine. The prosecutor stated that Rowan had declined to discuss the matter. Wilson's attorney then proffered the following additional information about Dugan, which she said that she had received from the discharged alternates while the jury was deliberating:

> At the very beginning of the trial, [Dugan] began to explain to them that he had expertise in the matter of evidence, and that he demonstrated this by telling them that when I objected to the introduction [into] evidence [of] the copy ... that my objection was unfounded, that it was frivolous, that it would be overruled because the ... Court did not need to have the original.
>
> And while the jury was waiting to continue with the trial, that he explained to them that their waiting was a complete waste of time.... The two alternates said that at that particular time his word was the Word of God.
>
> ... The ... two alternates told me that they were under the impression that the entire jury ... would find my client guilty as the result of the very strong position that this particular juror had taken ... and that they were ... anxious to come forward if ... it [was] required of them at any point in time ... because they felt that

an injustice might be done as far as the verdict was concerned.

Wilson's attorney made an oral motion for a new trial. Following some preliminary discussion of the issues which had been raised, the judge scheduled an evidentiary hearing on the motion for November 10, 1993.

### B. The Evidentiary Hearing.

At the November 10, 1993 hearing, the judge limited the inquiry to the contact between Rowan and Dugan, and she declined to hear testimony from the alternates or from Dugan regarding Dugan's alleged comments to other jurors. Both Rowan and Dugan testified regarding their telephone conversation, and the trial judge subsequently stated, in an order denying Wilson's motion for a new trial, that she credited the sworn testimony of both men. The judge found that on Sunday, October 24, 1993, after obtaining Rowan's home telephone number from Rowan's mother,[1] Dugan left a message on Rowan's answering machine. Not knowing the purpose of the call, and unaware that Dugan was serving as a juror at the time, Rowan returned the call later that evening. Without naming the defendant or the prosecutor, and without disclosing whether the case was a felony or a misdemeanor, Dugan indicated that he was a juror in a Superior Court drug case, and that the prosecution had not called a chemist to testify at the trial. He asked Rowan if the government was required to call a chemist. Rowan responded by asking Dugan: "Should we be having this conversation?" Dugan responded: "Well, no." Rowan further stated that he was uncomfortable discussing the subject, and the conversation, which lasted no more than two minutes, ended without any discussion of substantive matters.

On the day after the verdict was announced, Rowan reported the conversation to his supervisor. By coincidence, the prosecutor in Wilson's case was also in the supervisor's office, and she overheard Rowan telling the supervisor about the call. She determined that the incident described by Rowan related to the trial which she had completed on the previous day, and she immediately notified defense counsel and the court of the incident.

The trial judge took Wilson's motion for a new trial under advisement. She issued her written decision on November 19, 1993.

### C. The Trial Judge's Decision.

In her written order, the judge, after making the findings summarized above, held that Wilson was not entitled to a new trial. She concluded that

[t]he contact between Dugan and Rowan did not cause any actual harm or prejudice to defendant. While Dugan plainly should have known not to call a prosecutor in relation to the case in which he was sitting as a juror, the prosecutor he called properly declined to answer his evidentiary question. Moreover, Dugan left Rowan without any knowledge of the particular case which prompted Dugan to make an inquiry. Nor did Rowan attempt to ascertain the identity of the case [or] of its prosecutor after Dugan called. In fact, Rowan did not discuss the communication from Dugan with anyone until he talked to a friend [on] the evening of October 25, 1993. Thus, Rowan's first communication with anyone about Dugan's call to him came after the jury, having reached a verdict, was discharged.

In light of the absence of any actual prejudice resulting from Dugan's call to Rowan, this Court will not grant a new trial. See Smith v. Phillips, 455 U.S. 209, 215–216 [102 S.Ct. 940, 944–45, 71 L.Ed.2d 78] (1982); Remmer v. United States, 347 U.S. 227, 229–230 [74 S.Ct. 450, 451, 98 L.Ed. 654] (1954); Artisst v. United States, 554 A.2d 327, 330 n. 3 (D.C.1989).

Turning to Dugan's allegedly improper comments to other jurors during the trial, the judge was of the opinion that Wilson's attorney had waived the point:

Defense counsel obtained information about Dugan's alleged criticisms of her from the alternates after they were excused around lunchtime on October 25, 1993. Defense counsel did not make any

---

1. Dugan had known Rowan's parents for many years.

objection to the Court following the interview(s) with the alternates. Instead, defense counsel remained mute during the afternoon while the jury deliberated for more than two hours. Defense counsel did not even object after the jury announced its verdict at the end of the day. From a tactical standpoint, a former prosecutor who criticized defense counsel's performance at any point in the trial might have alienated jurors from the government, causing them to favor the defense. By choosing to remain silent about known alleged juror misconduct, defense counsel waived the right to seek a new trial based on such misconduct once the jury returned a guilty verdict. *See United States v. Breit*, 712 F.2d 81, 83 (4th Cir.1983).

The judge also concluded that "a judicial inquiry into what the alternate jurors heard Dugan say during the trial would be pointless." She noted that the discharged alternate jurors did not participate in jury deliberations and that they could only speculate as to the effect of Dugan's alleged remarks on the verdict. Finally, the judge wrote that

[u]nder the common law and the case law of the District of Columbia, a court may not admit juror testimony to impeach a jury verdict, except where extraneous influence was alleged to have affected the jury. *Tanner v. United States*, 483 U.S. 107, 116–27 [107 S.Ct. 2739, 2745–51, 97 L.Ed.2d 90] (1987); *Klimes v. United States*, 263 F.2d 273, 274 (D.C.Cir.1959) (*cited with approval in Sellars v. United States*, 401 A.2d 974, 982 (D.C.1979)). Juror Dugan's alleged comments to other deliberating jurors fall squarely within this longstanding prohibition of the impeachment of jury verdicts with testimony from one juror about another. The Court has

found no authority in support of defendant's Motion.

## II.

## LEGAL DISCUSSION

■ On appeal, Wilson contends that the trial judge abused her discretion by restricting the scope of the evidentiary hearing to the conversation between Dugan and Rowan.[2] He claims that he should have been permitted to present the testimony of the discharged alternate jurors regarding Dugan's alleged criticism of defense counsel to the other members of the jury, and that he was also entitled to interrogate Dugan on that subject. Wilson disputes the judge's conclusion that his trial counsel waived the claim based on the proposed testimony of the alternate jurors by failing to assert it until after the jury had returned its verdict, and he claims that, at the very least, the judge should have given counsel an opportunity to explain why she did not raise this issue earlier.[3] Finally, Wilson contends that the doctrine which proscribes juror testimony to impeach a verdict (except in cases of alleged extraneous influence) was inapplicable because the proffered witnesses were alternate jurors who did not participate in deliberations, and because the subject matter of their proposed testimony related to events which allegedly occurred before deliberations began.

■ The issues of waiver and of the applicability of the *Tanner* line of cases have been effectively briefed and argued by the parties. We find it unnecessary to decide these questions, however, because even if we were to assume that there was no absolute waiver,[4] and even if the "no impeachment"

2. Wilson makes no contention in this court that the judge erred in concluding that Wilson was not prejudiced by the aborted conversation between the two men.

3. Wilson's attorney advised the judge that she had not had an opportunity to share the information with her client during the brief period between the dismissal of the alternates and the return of the verdict.

4. Wilson contends that there was no waiver because there was no evidence, and no finding by

the judge, that defense counsel *"deliberately and knowingly* elected not to bring this information to the court's attention." *Breit, supra*, 712 F.2d at 82 (emphasis added). It is undisputed, however, that defense counsel knew of the alternates' claims while the jurors were deliberating, but that she did not inform the judge until two days after the return of the verdict. As one court has reasonably observed, "the defendant cannot wait to hear the verdict before contesting the impartiality of the jury and then attack the court's refusal to investigate his allegation." *United*

rule was inapplicable,[5] a new trial would not be warranted in this case.

As soon as she heard of the allegations of juror misconduct, the trial judge directed that an evidentiary hearing be convened. Wilson's only complaint on appeal is that the judge restricted the hearing to a single issue, and that she declined to hear testimony with respect to a second. We have, however, accorded trial judges "wide latitude" with respect to the extent of the inquiry to be made in cases of this kind. *Leeper v. United States,* 579 A.2d 695, 698–99, 700 (D.C.1990).

■■■ In exercising her discretion, the trial judge was required to consider the fact that "[a]llegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process." *Tanner, supra,* 483 U.S. at 120, 107 S.Ct. at 2747. "Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct." *Id.* at 120–21, 107 S.Ct. at 2748. In light of these considerations, a judge surely does not abuse her discretion by refusing to hold an evidentiary hearing on, or expand a hearing to include allegations which, even if true, would not warrant interference with the jury's verdict.

■■■ Judge Irving Goldberg has made the point well:

All must recognize, of course, that a complete sanitizing of the jury room is impossible. We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies. These involve the very human elements that constitute one of the strengths of our jury system, and we cannot and should not excommunicate them for jury deliberations. Nevertheless, while the jury may leaven its deliberations with its wisdom and experience, in doing so it must not bring extra *facts* into the jury room. In every criminal case we must endeavor to see that jurors do not [consider] in the confines of the jury room ... specific facts about the specific defendant then on trial.... To the greatest extent possible all factual [material] must pass through the judicial sieve, where the fundamental guarantees of procedural law protect the rights of those accused of crime.

*United States v. McKinney,* 429 F.2d 1019, 1022–23 (5th Cir.1970) (emphasis in original); *see also United States ex rel. Owen v. McMann,* 435 F.2d 813, 818 (2d Cir.1970) (Friendly, J.) (quoting *McKinney* ), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971). In the present case, there is no claim that Dugan brought any additional facts to the attention of the jurors. The only non-speculative allegations in the proffer made to the judge by Wilson's attorney concerned Dugan's negative comments regarding that attorney.[6] Assuming that Dugan

States v. Edwards, 696 F.2d 1277, 1282 (11th Cir.), cert. denied, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983); see also Breit, supra, 712 F.2d at 83 ("[a] defendant who remains silent about known juror misconduct—who, in effect, takes out an insurance policy against an unfavorable verdict—is toying with the court"); accord, Hopkins v. United States, 595 A.2d 995, 996 n. 3 (D.C.1991) ("one cannot take his chances on a favorable verdict, reserving a right to impeach it if it happens to go the other way"). Thus, even assuming that there was no knowing and deliberate waiver of the issue, counsel's failure to raise it in a timely fashion is, at least, a significant factor to be included in the court's calculus. Indeed, we do not understand Wilson to be contending otherwise.

5. This rule is intended to discourage harassment of jurors by losing parties, to encourage free and

open discussion among jurors, to reduce the incentive for jury tampering, to promote the finality of verdicts, and to preserve the viability of the jury as a decision-making body. *Government of Virgin Islands v. Gereau,* 523 F.2d 140, 148–49 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976). Arguably, most (if not all) of these goals would be served by application of the rule to alternates on facts such as these. *See United States v. Cuthel,* 903 F.2d 1381, 1383 (11th Cir.1990) (rejecting the appellant's characterization of an alternate as an "outsider" for purposes of the *Tanner* doctrine).

6. According to defense counsel, the discharged alternates were also prepared to testify that, during deliberations, "[Dugan's] word was the word of God," and that the entire jury was therefore likely, unjustly, to find Wilson guilty. This conclusion regarding Dugan's dominance, and the

criticized or even ridiculed Wilson's counsel in the presence of other jurors, such conduct is a slim reed indeed on which to predicate the setting aside of the verdict.

In *United States v. Chiantese*, 582 F.2d 974 (5th Cir.1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979), an associate of the attorney for one of the defendants overheard a juror state to a second juror and to two alternate jurors that a defense attorney was "Stupid. Stupid. He's a pain in the ____." The trial judge refused the defendant's request that he *voir dire* the jury regarding the remark. On appeal, the Court of Appeals explained that "the decision to hold a hearing to determine whether juror misconduct has occurred is within the sound discretion of the trial judge and ... his ruling will not be reversed unless it constitutes an abuse of that discretion." *Id.* at 978. The court noted that refusal to hold an evidentiary hearing would have been reversible error if the defendant had alleged that there had been attempts by outside sources to influence the jurors. The court concluded, however, that the case before it was different:

> Although we certainly do not sanction the actions of the juror in this case, we do not think they rise to the magnitude of the fundamental prejudice inherent in cases of outside influence. The *juror's statements concerned the manner in which [the codefendant's] attorney conducted himself* in making his case. Her observations related to an aspect inseverable from our adversary system of justice, an aspect we would be naive to presume is not considered by jurors.
>
> We do not think, therefore, that the principles governing outside influence should control here
>
> . . . .

Our case does not fit well in this mode of analysis because the *juror's remarks did not concern the merits of the defense.* Of course, the jury may form opinions about a defendant's case because of the way his counsel conducts it, but the *juror here did not commit herself to any outcome in the case or demonstrate a prejudgment of the evidence.*

*Id.* at 979 (emphasis added); *accord, United States v. Bowling*, 900 F.2d 926, 935 (6th Cir.), *cert. denied*, 498 U.S. 837, 111 S.Ct. 109, 112 L.Ed.2d 79 (1990).

The present case is very similar to *Chiantese*. We do not condone Dugan's conduct as a juror, particularly since he is an attorney who should have known better, and whom we would have expected to set an example to other jurors in complying with the directions of the court. We discern no appreciable possibility, however, that Dugan's alleged comments to the other jurors, if they were made, significantly affected the verdict. Accordingly, the trial judge did not abuse her discretion by declining to take testimony on the issues raised by defense counsel's proffer.

## III.

## CONCLUSION

For the foregoing reasons, Wilson's conviction is hereby

*Affirmed.*[7]

---

other jurors' susceptibility to his domination, is entirely speculative, for deliberations had not yet begun. Moreover, if Dugan was as dominant as defense counsel proffered, then the two alternate jurors' obvious immunity from Dugan's influence was itself somewhat remarkable.

7. At oral argument, Wilson's attorney noted Dugan's testimony that before he called Rowan "I was thinking of looking up in a law book an issue

and I thought that I could call a friend's son to get a quick answer. I had absolutely no intent of telling the jury the results of that and I didn't tell them." Counsel complained that Dugan was not asked whether he actually looked anything up, and that inquiry on this subject should have been permitted. No issue regarding consultation of a law book was raised in the trial court, or even in Wilson's brief on appeal, however, and there was no plain error.