918 A.2d 720 (2007)
391 N.J. Super. 509
STATE of New Jersey, Plaintiff-Respondent,
v.
Joseph BIANCO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 7, 2007.
Decided April 3, 2007.
*721 Yvonne Smith Segars, Public Defender, attorney for appellant (William Welaj, Designated Counsel, of counsel and on the brief).
Theodore J. Romankow, Union County Prosecutor, attorney for respondent (Steven J. Kaflowitz, Assistant Prosecutor, of counsel; Amy F. Newcombe, Law Intern, on the brief).
Before Judges WEFING, PARKER and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, defendant claims the right to a new trial because a juror, upon realizing during deliberations that he knew defendant, failed to make that fact known to the trial judge and, as a result, participated in the rendering of the guilty verdict. Although the juror should have immediately brought this to the trial judge's attention, we affirm because defendant also realized during the trial that he and the juror had been acquainted in the past, and waived the right to complain by remaining silent until after the verdict.

I
The jury heard evidence in this matter that, at the time of the alleged offenses, nine-year old E.B. lived with her mother, stepfather and two half-brothers in a two-family home; E.B.'s grandmother, Cathy Osterman, lived in the other half of the two-family home. Defendant had been dating Osterman for more than ten years and, as a result of this long-standing relationship, E.B. viewed defendant as a grandfather-figure, and referred to him as "Pop-Pop."
Defendant often took E.B. and her siblings to the park or out to eat. The jury *722 heard testimony that, on certain of those occasions, defendant inappropriately touched E.B. The last such touching was alleged to have occurred on July 24, 2002.
Defendant testified on his own behalf and denied any wrongdoing. At the conclusion of the trial, defendant was found guilty of second-degree sexual assault, N.J.S.A. 2C:14-2(b), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).
Defendant moved for a new trial, arguing, among other things, that he realized  after the verdict  that he and Osterman knew one of the jurors from their past employment at Merck Pharmaceuticals in Rahway. He claimed that the juror had engaged in misconduct by failing to come forward with this information during jury selection or thereafter. Judge Scott J. Moynihan conducted an evidentiary hearing into these circumstances, and heard testimony from the juror in question on November 21, 2003, the remaining members of the jury, Osterman, and defendant's trial attorney on February 6, 2004, and Sherry Bianco, defendant's daughter, on August 6, 2004. For the reasons thoroughly expressed in his oral decision of September 20, 2004, Judge Moynihan denied defendant's motion for a new trial.
Defendant was later sentenced. Following a merger of the two counts, Judge Moynihan imposed a seven-year term of imprisonment with an 85% period of parole ineligibility.
Defendant appealed, raising the following arguments for our consideration:
I. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A NEW TRIAL.
A. Factual Introduction.
B. In Reaching Its Conclusion That The Defendant's Motion For A New Trial Should Be Denied, The Trial Court Made Certain Credibility Findings Which Were Clearly Mistaken And Factually Unsupported By The Trial Record.
C. The Defendant Was Denied His Right To Utilize A Peremptory Challenge Against [The Juror], Justifying A New Trial On That Basis.
D. The Defendant Was Denied His Right To Have His Case Tried Before And Decided By A Completely Fair And Impartial Jury By Virtue Of The Failure Of [The Juror] To Disclose His Knowledge Of And Relationship With Cathy Osterman.
E. The Defendant Was Denied His Right To A Fair Trial As A Result Of [The Juror's] Failure To Inform The Court That He Realized He Knew The Defendant During Jury Deliberations.
II. THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
III. THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
We find insufficient merit in the arguments contained in Points II and III to warrant discussion in a written opinion. R. 2:11-3(e)(2). We also reject the arguments contained in Point I for the following reasons.

II
Defendant argues that he is entitled to a new trial because a juror's failure to disclose his past acquaintance with him and Osterman deprived him of an impartial jury and unduly interfered with his ability to knowingly exercise peremptory challenges during jury selection. In considering these issues, we first reject defendant's argument that the judge's credibility findings were mistaken. As will be seen, there was more than adequate evidence to support all the judge's findings, *723 and the inferences he drew from the evidence were permissible and reasonable. We, thus, discern from the record no sound reason to reject the judge's findings, which are deserving of our deference. State v. Locurto, 157 N.J. 463, 470, 724 A.2d 234 (1999).
An examination of the circumstances that prompted defendant's motion for a new trial must begin with jury selection. During that process, Judge Moynihan provided each member of the venire with a typed list of questions that he also verbally posed to the initial fourteen persons seated in the jury box; the juror in question (hereafter "Juror 11") was one of the original fourteen seated.
The second of the judge's scripted questions inquired whether any of the jurors knew any persons "who might be called as witnesses or whose names you might hear during the course of the trial." Among the persons the judge then identified was "from Rahway, Cathy Osterman." Following the posing of all these questions to the group of fourteen, Judge Moynihan then asked each person individually whether he or she had any affirmative response to any of his questions. When he eventually turned his attention to Juror 11, the judge observed that this juror had not responded in the affirmative to any question, causing the judge to ask whether he "miss[ed] something." Juror 11 said, "No." Upon further probing about his family and employment, Juror 11 revealed that he lived with his wife and two grandchildren, and that he and his wife had both worked at Merck Pharmaceuticals in Rahway, but were retired.
During the hearing, which the judge conducted in order to illuminate and scrutinize the factual contentions posed in defendant's motion for a new trial, Juror 11 testified that he did not recognize defendant at the time of jury selection. It had been four years since he had last seen defendant, and his appearance had greatly changed in the interim. Defendant no longer wore a beard or his hair in a ponytail; instead, as the judge observed in his findings, "defendant was clean shaven and his hair was shorter at trial."
Juror 11 testified, however, that he began to think that he knew defendant upon reviewing an exhibit during deliberations. He also acknowledged during the post-verdict hearing that he knew Osterman. When asked why he did not divulge those facts during voir dire, Juror 11 explained that he did not then recognize defendant nor realize that Osterman was the same "Cathy Osterman that I knew."
Judge Moynihan found Juror 11 to have given "highly credible testimony," and synopsized his view of its significance in the following way:
Here, [Juror 11] did not disclose what was at the time not known to him. One could not disclose what [one] does not know. Although [Juror 11] was known to the defendant it does not correlate that the defendant or Cathy Osterman was known to [Juror 11] during voir dire. In fact, the [c]ourt is sure [Juror 11] did not possess knowledge of defendant or Cathy Osterman at the time the jury was questioned.
The judge additionally found that defendant was aware, during the course of the trial, that Juror 11 knew him, and Cathy Osterman as well. Judge Moynihan based this finding on a number of sources. First, the judge received a letter from Sherry Bianco (Sherry), defendant's daughter, on October 24, 2003, which stated that defendant informed his attorney during the trial that he might have known Juror 11. In her letter, Sherry urged the judge to grant a new trial because her father's attorney failed to "follow[] up on this," and, if he had, "I believe he would *724 have brought it to your attention during trial" (emphasis added). As the judge observed in his decision on the motion for a new trial, this letter permitted an inference that Sherry was informed by defendant of his past acquaintance with Juror 11 during the course of the trial. Although Sherry testified to the contrary during the post-verdict hearing, Judge Moynihan found that testimony to be unworthy of credit:
The [c]ourt does not believe Miss Bianco's testimony that her father . . . did not tell her [of his] connection with [Juror 11] until after the verdict was returned.
Miss Bianco's concern for her father was evident as she testified. Although she attributed statements in her letter to mistakes made in haste[,] this [c]ourt believes the letter to contain the truth . . . [and that Sherry] recanted her letter to protect her father, whom she obviously loves. . . .
Second, the judge relied on defendant's trial attorney, who testified that defendant told him, during jury selection, "that [Juror 11] looked familiar to him," but that they did not further discuss the matter, choosing instead to "wait[ ] to see what happened during jury selection." This fact also buttressed the judge's finding that defendant was aware of his past relationship with Juror 11 during the course of the trial and not, as argued in his motion, until after the verdict was rendered.
Third, the judge relied on Osterman's testimony that defendant told her there was a juror on the panel who worked with them at Merck. In a certification executed by Osterman and submitted in support of defendant's motion, she stated that after his conviction, defendant spoke with her by telephone and said that he thought one of the jurors was known to them. However, at the post-verdict hearing, Osterman testified that defendant told her "during the trial" that a member of the jury had worked at Merck and that the juror "looked familiar," although defendant "couldn't place him." The judge credited Osterman's testimony that defendant indicated  during trial  that he was aware that Juror 11 knew him. As Judge Moynihan observed, this conclusion was further supported by the fact that although Osterman was uncertain about where her conversation with defendant had taken place, "she was certain it was not in the Union County Jail or in the courthouse." Relying upon this testimony, Judge Moynihan drew the permissible inference that Osterman's conversation with the defendant "took place during trial, since the defendant was not incarcerated during the trial." That is, if the conversation had occurred after the trial, it would have been while defendant was in the county jail since his bail was revoked immediately after the verdict was rendered.
Based on all this evidence, the judge concluded:
It is obvious to this [c]ourt that when [Juror 11] disclosed he worked at Merck [during jury selection] the defendant recognized him and told his [c]ounsel of this familiarity with the juror [and that] defendant knew [Juror 11] was on the jury and left him there thinking [Juror 11's] presence on the jury could only help him.
Consequently, Judge Moynihan determined that defendant waived his right to complain of the juror's failure to reveal his past familiarity with defendant and Osterman by choosing not to seek Juror 11's removal prior to the rendering of a verdict.
In addition, the judge found that this omitted information did not impact on defendant's utilization of peremptory challenges because defendant believed that his past relationship with the juror might *725 be of benefit to him and defendant would not have challenged him during jury selection.
Ultimately, as the judge perspicaciously recognized, defendant made a "strategic decision" to remain silent about Juror 11's oversight during voir dire, believing, first, that there was an advantage to having Juror 11 on the panel, but that also, if he was convicted, he could get "a second bite of the apple" by seeking a new trial based upon Juror 11's failure to disclose. Concluding that defendant should not be rewarded for attempting to "manipulate" the system, the judge denied defendant's motion for a new trial.

III
An accused is constitutionally guaranteed the right to trial by an impartial jury. State v. Fortin, 178 N.J. 540, 575, 843 A.2d 974 (2004); State v. Tinnes, 379 N.J.Super. 179, 183, 877 A.2d 313 (App.Div.2005). Jury selection is "an integral part of the process to which every criminal defendant is entitled," State v. Singletary, 80 N.J. 55, 62, 402 A.2d 203 (1979), and necessarily requires "a thorough voir dire," State v. Fortin, supra, 178 N.J. at 575, 843 A.2d 974, which presupposes that prospective jurors will provide complete and accurate responses during voir dire. It, thus, follows that a juror's failure to mention, after jury selection, an incorrect or a misleading answer that was given during voir dire, potentially endangers an accused's right to a fair trial.
Recently, our Supreme Court emphasized the importance of a thorough and meaningful voir dire by revamping the standards that govern the conducting of jury selection:
The purpose of jury selection is to obtain a jury that can decide the case without bias against any of the involved parties, that will evaluate the evidence with an open mind, and that will apply the law as instructed by the judge. Voir dire practices must be geared to eliciting meaningful information from prospective jurors so those with a real potential for bias can be excused.
[Standards for Jury Selection (promulgated by Directive # 21-06 on December 11, 2006) at page 1.]
If clear and accurate answers from prospective jurors are not encouraged through a thorough and meaningful process, counsel may be hampered, if not foreclosed, from learning of a basis for excusing the prospective juror for cause or by peremptory challenge. Ibid. When the court and counsel are misinformed, or inadequately informed, and the parties' ability to exercise peremptory challenges is infringed, then it may be said that there has been a deprivation of the parties' fundamental right to a fair trial. State v. Thompson, 142 N.J.Super. 274, 282, 361 A.2d 104 (App.Div.1976). It matters not, in this regard, whether the juror's omission or misstatement is deliberate or, as here, unintentional. Id. at 280, 361 A.2d 104.
The failure of voir dire to produce accurate information, however, does not compel the granting of a new trial in all cases. This case presents circumstances which fully support the judge's denial of the motion for a new trial. First, because defendant was aware, prior to the verdict, of the juror's omission, and remained silent until after the verdict was rendered, he waived his right to complain. And, second, the trial judge found, after weighing the evidence adduced at the post-verdict hearing, that the information the juror failed to disclose during jury selection, or later during the trial, was not potentially prejudicial to defendant; as a result of that finding, there is no reason to believe that defendant would have been inclined to exercise *726 a peremptory challenge if the juror had provided the information during jury selection.

A
Although the need to obtain accurate information during jury selection cannot be understated, a defendant may waive the right to complain about shortcomings in the selection process, or of a juror's failure to disclose information, if defendant knowingly failed to seek the juror's removal prior to the rendering of the verdict. Here, the judge found that defendant was aware that Juror 11 had not disclosed his familiarity with defendant and Osterman. Had defendant raised this oversight prior to the rendering of a verdict, Juror 11 could have been removed. See, e.g., State v. Jenkins, 182 N.J. 112, 861 A.2d 827 (2004); State v. Farmer, 366 N.J.Super. 307, 841 A.2d 420 (App.Div.), certif. denied, 180 N.J. 456, 852 A.2d 192 (2004). If the juror was removed prior to the rendering of a verdict, what defendant complains of now  that the jury was not impartial and that he was deprived of his ability to exercise a peremptory challenge to remove Juror 11  would have been avoided.
Although our courts have not decided this precise issue, we conclude that defendant's knowing failure to speak prior to the jury's verdict constitutes a waiver of his right to later complain of Juror 11's continued participation in the case, as all other courts, which have encountered this circumstance, have concluded. For example, in United States v. Costa, 890 F.2d 480, 482 (1st Cir.1989), both defendants sought a new trial because a member of the jury was a "prior acquaintance" of one of the defendants  a fact not revealed by the juror during voir dire. After conducting a hearing, the district judge concluded that defendants had waived their right to complain, and the court of appeals agreed, observing that it was well-established that a defendant's failure to raise a claim of juror misconduct until after trial, when the issue was known to defendant during trial, amounts to a waiver. The court of appeals explained that "[a]ny other rule would allow defendants to sandbag the court by remaining silent and gambling on a favorable verdict, knowing that if the verdict went against them, they could always obtain a new trial by later raising the issue of juror misconduct." Ibid. Other courts have drawn the same conclusion. See United States v. Bolinger, 796 F.2d 1394, 1400-01 (11th Cir.1986), modified on other grounds, 837 F.2d 436 (11th Cir.), cert. denied sub. nom., De La Fuente v. United States, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988); United States v. Ramsey, 726 F.2d 601, 604 (10th Cir.1984), cert. denied, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986); United States v. Breit, 712 F.2d 81, 83 (4th Cir.1983); United States v. Dean, 667 F.2d 729, 730 (8th Cir.) (en banc), cert. denied, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); United States v. Bertoli, 854 F.Supp. 975, 1115 (D.N.J.1994); Titus v. State, 963 P.2d 258, 265 (Alaska 1998); State v. Adams, 27 Ariz.App. 389, 555 P.2d 358, 360 (1976); State v. Durfee, 322 N.W.2d 778, 786 (Minn.1982); State v. Roden, 216 Or. 369, 339 P.2d 438, 439 (1959). In generally adhering to the waiver concept expressed by these federal and state courts, we conclude that when a defendant knows a juror has failed to reveal during voir dire that he and defendant were once acquainted, he has waived the right to later complain of the juror's continued service on the jury.

B
We also conclude that even if the record did not support a finding of waiver, the juror's failure to disclose that he was *727 acquainted with defendant and Osterman in the past did not require a new trial.
Defendant chiefly relies upon State v. Thompson, supra, 142 N.J.Super. at 280-82, 361 A.2d 104, in arguing that a new trial is required. Notwithstanding defendant's forceful argument, our holding is not inconsistent with State v. Thompson or other decisions of our courts which have held that an omission or falsification of information by a juror during voir dire will constitute grounds for reversal without a showing of prejudice if it can be shown that a peremptory challenge would have been utilized to excuse the juror had the information been known. See, e.g., State v. Cooper, 151 N.J. 326, 349-51, 700 A.2d 306 (1997), cert. denied, 528 U.S. 1084, 120 S.Ct. 809, 145 L.Ed.2d 681 (2000); State v. Scher, 278 N.J.Super. 249, 262-68, 650 A.2d 1012 (App.Div.1994), certif. denied, 140 N.J. 276, 658 A.2d 299 (1995). The type of information that was misrepresented or omitted during jury selection in those cases suggested the potential for the juror's bias against defendant,[1] unlike here, where the judge found that the omitted information suggested that the juror might be biased in favor of defendant.
In other words, we have held that it is the juror's failure to disclose material that is "potentially prejudicial" to the defendant that is critical. State v. Scher, supra, 278 N.J.Super. at 264, 650 A.2d 1012. As explained by the Court in In re Kozlov, 79 N.J. 232, 239, 398 A.2d 882 (1979):
Where a juror on voir dire fails to disclose potentially prejudicial material, such as that involved in this case, a party may be regarded as having been denied [a] fair trial. This is not necessarily because of any actual or provable prejudice to his case attributable to such juror, but rather because of his loss, by reason of that failure of disclosure, of the opportunity to have excused the juror by appropriate challenge, thus assuring with maximum possible certainty that he be judged fairly by an impartial jury.
In short, as the Court held in State v. Cooper, a juror's omission of information during voir dire "is presumed to have been prejudicial if it had the potential to be prejudicial." 151 N.J. at 349, 700 A.2d 306.
To summarize, Judge Moynihan found that Juror 11's past relationship with defendant and Osterman did not suggest he would be biased against defendant. To the contrary, the judge credited Juror 11's testimony that based on his familiarity with defendant he found it particularly difficult to accept that defendant had engaged in the offenses alleged by the State. In describing Juror 11's state of mind, Judge Moynihan found that, during deliberations, Juror 11 "did not think the *728 defendant would be involved with the crimes with which the defendant was charged . . .[;][h]e knew defendant and Cathy Osterman to be close, so close that he did not think the defendant would be the one charged with sexual assault." In short, as Judge Moynihan found, Juror 11's reaction, once he recognized the defendant, "was the reaction that the defendant hoped for when he left [Juror 11] on the jury;" that is, defendant anticipated Juror 11's initial "disbelief that the defendant could commit ... a crime of this nature."
In light of these findings, to which we defer, State v. Locurto, supra, 157 N.J. at 470, 724 A.2d 234, we conclude that defendant was not prejudiced by Juror 11's failure to come forward upon realizing that he knew defendant and Osterman.

IV
In light of the absence of any arguable prejudice resulting from the juror's failure to disclose his past acquaintance with defendant and Osterman, and in light of defendant's failure to raise the matter until after the verdict was rendered, we find the colorful description of the basis for a finding of waiver expressed by the court in United States v. Breit, supra, 712 F.2d at 83, to be particularly apt here: "[a] defendant who remains silent about known juror misconduct  who, in effect, takes out an insurance policy against an unfavorable verdict  is toying with the court." We, thus, conclude that the trial judge correctly found that defendant waived the right to complain about the juror's omissions during voir dire or about the juror's failure to come forward immediately upon realizing his mistaken voir dire responses, and that the juror's omission had no conceivable prejudicial impact on defendant's right to a fair trial or in the exercise of his peremptory challenges during jury selection.
We make one final observation. As we have indicated, Juror 11 was obligated to come forward and advise the trial judge immediately upon realizing that he had incorrectly responded during voir dire. Juror 11's failure to meet that obligation demonstrates the need for the rendering by trial judges of an additional preliminary instruction.
Here, the trial judge adhered to the preliminary instructions contained in our Model Jury Charges. A section of those model charges, the essence of which the trial judge provided to the jury here, impresses upon the jury the importance of remaining impartial and free from outside influence:
During the trial, you are not to speak to or associate with any of the attorneys, the witnesses or the defendant, . . . nor are they permitted to speak or associate with you. This separation should not be regarded as rudeness but rather as a proper precaution to ensure fairness to both sides. If anyone connected with this case, or any other person, approaches you or attempts to influence you in any way, do not discuss it with the other jurors. Simply tell the sheriff's officer and I will be notified immediately.
[Model Jury Charges (Criminal), "Instructions After Jury Is Sworn" (2004).]
This model jury charge instructs that jurors who have been approached by an outside source must immediately report that occurrence. However, the obligation to immediately come forward and correct a misstatement or omission during jury selection is not included. We hold that such an instruction ought to be given by trial judges in their preliminary instructions.
As mentioned earlier, the Supreme Court recently directed changes in the manner in which voir dire is to be conducted, recognizing the need for greater depth *729 in the examination of potential jurors than had been the prior practice in some trial courts. One of the Court's chief purposes in imposing these changes was to create a process by which greater information could be obtained from prospective jurors in order to enhance the parties' ability to knowingly seek a prospective juror's dismissal for cause or to knowingly exercise peremptory challenges. See Standards for Jury Selection, supra, at page 1. The present case demonstrates the need for trial judges to also firmly remind jurors of their obligation to immediately report to the judge any misstatement or omission the juror may have made during the selection process.
Affirmed.
NOTES
[1] For example, in State v. Cooper, supra, 151 N.J. at 351, 700 A.2d 306, the Court held that a new trial was not required in this capital case when a juror failed to disclose she had a cousin serving a term in federal prison because this fact did not suggest that she was "a `bad' defense juror." In State v. Scher, we held there was no "practical impact on the trial" when a juror failed to reveal his father and brother were involved in law enforcement because the juror, having been estranged from his father since he was thirteen years old, was unaware of his father's involvement in law enforcement, and although he knew his brother was a police detective, by the time of jury selection his brother had been disabled and the juror did not believe his brother would return to the police department. 278 N.J.Super. at 260-61, 267, 650 A.2d 1012. In Scher, we also observed that defendant had not exercised peremptory challenges to excuse other jurors who had relatives in law enforcement. Id. at 267, 650 A.2d 1012. By comparison, we held that a new trial was required in State v. Thompson, where a juror had failed to reveal that he had been a correctional officer. 142 N.J.Super. at 277, 361 A.2d 104.