**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3594-18T1

GAETANO GRAZIANO
and VERONICA GRAZIANO,

     Plaintiffs-Appellants,

v.

IBRAHIM IBRAHIM and
CELINES MORALES-RIBIERO,

     Defendants,

and

JEFFREY STRAIN and BERGEN
LAPAROSCOPY & BARIATRIC
ASSOCIATES, LLC,

     Defendants-Respondents.

_____

Submitted January 13, 2020 – Decided March 2, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8346-14.

Simonson Goodman Platzer, PC, attorneys for appellants (Edward Seth Goodman, on the briefs).

Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys for respondents (Michael R. Ricciardulli, of counsel and on the brief; Michael Josehp Di Leo and Kristen Jean Brummer, on the brief).

PER CURIAM

In this medical malpractice case, plaintiffs appeal from an April 5, 2019 order denying their motion for a new trial. Plaintiffs made that motion once they learned that a juror disclosed—after the jury returned a verdict of no cause of action—that he had previously been to defendant's house five-to-eight years earlier to prepare a bid for landscaping work. Judge Charles E. Powers, Jr. conducted a post-trial hearing, took testimony from two jurors, and denied the motion. We affirm substantially for the reasons given by the judge in his written opinion.

At the end of the trial, alternate juror #8 approached plaintiffs in the parking lot and told them that juror #3 mentioned to the rest of the jurors (after the verdict) that he previously prepared a bid for landscape work at defendant's home. After learning this information, the judge required both jurors return to the courtroom, questioning them on the record about what happened. Thereafter, the judge entered the order under review.

2

Juror #3 testified that he worked for a landscaping company and received referrals from a landscape architect. After being selected to serve on the jury, juror #3 told the landscape architect that he would be "out of commission work-wise" because of the case. The landscape architect asked about the type of case, and juror #3 said some kind of "stomach thing." The landscape architect then left for vacation, and the trial started.

When the landscape architect returned from his vacation, he talked to juror #3, who realized for the first time he had been to defendant's house "five, six, seven, eight years ago," at the request of the landscape architect, regarding a possible job. Although juror #3 went to defendant's house at that time, he said he never met or talked to defendant, and that his company never got the job. Juror #3 said that he told the jurors—after they returned the verdict—that he had been to defendant's house "a number of years ago," but that he "did not know prior to the [start of] trial that [he] had been there." Juror #3 explained that at the end of trial, his landscape architect told him "we had been to [defendant's] house[.]" Up to that point, and not "until well into the trial," or "three weeks into the trial, two-and-a-half weeks into the trial," juror #3 did not know he had been there. When he learned that information, he said to himself "holy moly . . . I was there." But juror #3 said he never met defendant or talked to him or

his wife.  Juror #3 said that when he learned that he had been to defendant's house, he was "absolutely shocked," and that he decided he "had better keep [his] mouth shut."

On appeal, plaintiffs argue that they are entitled to a new trial because juror #3's failure to disclose this information deprived them of an impartial jury and unduly interfered with their ability to knowingly exercise peremptory challenges during jury selection.

Parties to an action "are entitled to have each of the jurors who hears the case, impartial, unprejudiced and free from improper influences."  Panko v. Flintkote Co., 7 N.J. 55, 61 (1951).  Indeed, the "right to be tried before an impartial jury is one of the most basic guarantees of a fair trial." State v. Loftin, 191 N.J. 172, 187 (2007).  "That constitutional privilege includes the right to have the jury decide the case based solely on the evidence presented at trial, free from the taint of outside influences and extraneous matters." State v. R.D., 169 N.J. 551, 557 (2001).

> It is well settled that the test for determining whether a new trial will be granted because of the misconduct of jurors or the intrusion of irregular influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the [judge]'s charge.  If the irregular matter has that tendency on the face of it, a new trial should be granted without further inquiry as

A-3594-18T1

to its actual effect. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so. The stringency of this rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices.

[Panko, 7 N.J. at 61-62.]

Where a new trial is sought because of jury misconduct, "the motion should be determined with a view, not so much to the attainment of exact justice in the particular case, as to the ultimate effect of the decision upon the administration of justice in general." Id. at 62-63 (internal quotation marks and citations omitted).

"When there are allegations of jury misconduct, 'the trial judge must make a probing inquiry into the possible prejudice caused by any jury irregularity, relying on his or her own objective evaluation of the potential for prejudice rather than on the jurors' subjective evaluation of their own impartiality.'" Barber v. ShopRite of Englewood & Assocs., Inc., 406 N.J. Super. 32, 54 (App. Div. 2009) (quoting State v. Scherzer, 301 N.J. Super. 363, 487-88 (App. Div. 1997)). "'[T]endency' to influence the verdict—not probability or likelihood—is the standard for determining whether a new trial should be granted." Id. at 56. Although Panko references juror misconduct, Panko and its progeny largely addressed "extraneous" irregular influences from outside the jury. Panko, 7 N.J.

5

at 60-62 (a juror's relative told him the defendant was insured); see State v. R.D., 169 N.J. at 559. This is not a case of information tainting the entire jury because juror #3 never told the jurors about having been to defendant's house. Nevertheless, a motion for a new trial may be granted on the basis that a juror omitted or falsified material information during voir dire that "had the potential to be prejudicial," and if disclosed, would have given counsel a reasonable basis to exercise a peremptory challenge to exclude the juror. State v. Cooper, 151 N.J. 326, 349 (1997).

It is well settled that "[a] motion for a new trial is addressed to the sound discretion of the trial [judge]." Baumann v. Marinaro, 95 N.J. 380, 389 (1984); see also Hill v. N.J. Dep't of Corr. Comm'r Fauver, 342 N.J. Super. 273, 302 (App. Div. 2001). The grant or denial of a motion for a new trial should not be disturbed unless the judge abused his or her discretion. Hill, 342 N.J. Super. at 302; see also R. 2:10-1 (explaining the standard for a new trial and noting that a court's ruling on such a motion should not be reversed "unless it clearly appears that there was a miscarriage of justice under the law").

This court reviews the denial of a motion for a new trial using the same standard as the trial judge. Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011). Although this court must make its own determination of

whether the jury's verdict resulted in a miscarriage of justice, see Dolson v. Anastasia, 55 N.J. 2, 7 (1969), it must heavily rely on the trial judge's "feel of the case"; that is, the trial judge's "personal observations of all of the players." Jastram v. Kruse, 197 N.J. 216, 230 (2008) (recognizing the trial judge "sees and hears the witnesses and the attorneys, and . . . has a first-hand opportunity to assess their believability and their effect on the jury"). Jury verdicts "should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice." Risko, 206 N.J. at 521 (citation omitted).

Like the judge, we reject plaintiffs' assertion that they were effectively denied their right to a peremptory challenge as a result of juror #3's failure to disclose at voir dire that he had previously been to defendant's house. They also question juror #3's credibility, who denied that he was aware of his previous business relationship with defendant, and contend he was trying to influence the outcome of the case. We have no reason to second guess the judge's findings, and there is no evidence to suggest that juror #3 attempted to influence the outcome of the case.

A-3594-18T1

Moreover, a new trial is not warranted where a trial judge finds, at a post-verdict hearing, that the omission of the information during jury selection or trial was not potentially prejudicial to the party. State v. Bianco, 391 N.J. Super. 509, 518 (App. Div. 2007). In Bianco, this court examined a circumstance wherein a juror realized during deliberations that he knew the defendant, but he did not make that fact known to the judge and ultimately participated in deliberations. Id. at 511. We rejected the defendant's argument that he was denied a fair trial as a result of the juror's failure to disclose his acquaintance with the defendant. Id. at 520-22. This court noted that the juror's acquaintance with the defendant would suggest that he would be biased in favor of the defendant, rather than against, which is how the jury ultimately held. Ibid.

Here, there is no evidence that juror #3 was influenced in any way by preparing the bid. He did not meet defendant, never spoke to him, and could not recall when he submitted the bid. The landscape company was not awarded the job, and he never worked at defendant's house. Juror #3 did not remember, until he was reminded by the landscape architect, that he had ever been to defendant's house, and he displayed no signs of bias either for or against defendant. Indeed, the judge found there was absolutely no prejudice to plaintiffs "on account of [j]uror #3's supposed acquaintance with [d]efendant."

8

The judge further found that juror #3, who was credible, represented during voir dire that he could be fair and impartial during trial. The judge concluded there was no proof of bias whatsoever. If anything, not getting the landscaping job would have been less favorable to defendant, not plaintiffs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3594-18T1