142 N.J. Super. 274 (1976)
361 A.2d 104
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN EARL THOMPSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1976.
Decided June 10, 1976.
*277 Before Judges LYNCH, LARNER and HORN.
Mr. James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for defendant-appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Benjamin D. Leibowitz, Deputy Attorney General, argued the cause for plaintiff-respondent (Mr. William F. Hyland, Attorney General, attorney; Mr. Richard J. Engelhardt, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
After a jury trial defendant was convicted of rape (N.J.S.A. 2A:138-1), atrocious assault and battery (N.J.S.A. 2A:90-1) and robbery (N.J. *278 S.A. 2A:141-1). The court sentenced him to aggregate terms of 18 to 35 years in State Prison.
Among the appellate contentions asserted by defendant are: (1) he was deprived of his Sixth Amendment right to effective assistance of counsel; (2) the verdict was against the weight of the evidence, and (3) the sentence was manifestly excessive. We have considered these contentions and find them to be clearly without merit.
We are constrained, however, to reverse the conviction on another ground urged by defendant relating to the voir dire of one of the jurors who participated throughout the trial and the rendering of the verdict.
Approximately ten days after the verdict, one of the jurors forwarded a letter to the trial judge informing him that another juror, John Zaccaro, may have acted improperly. She pointed out that Zaccaro had informed the other jurors during their deliberations that he had served as a guard in a correctional institution about 25 years before and is presently serving on a juvenile hearing board in a municipality in the Trenton area. The writer expressed her concern over this revelation because when the jury panel was questioned on voir dire Zaccaro did not reveal these facts and because she noted that he made repeated references in the jury room to his familiarity with criminals and how they act as a result of his prior dealings with them.
Upon receipt of this letter the trial judge conducted an in camera interview of the writer in the presence of both counsel. At this time the juror repeated in substance the facts contained in the letter. Thereafter defendant's motion for a new trial was denied.
The record reveals that the court submitted the following questions to the jury panel on the voir dire examination:
Are you presently employed in any law enforcement work at any level of government whether State, municipal, county, et cetera, are you presently employed in any law enforcement work?
Have you ever in the past been employed in any such law enforcement work at any level of government?
*279 Juror Zaccaro offered no response to either of these questions. Investigation by the prosecutor pursuant to our request has confirmed the fact that this juror was temporarily assigned as a corrections officer at Trenton State Prison from June 24 to November 1, 1953.
The trial judge, in denying a new trial, based his determination on a finding that the juror's failure to respond to the question in light of his employment and current participation as a juvenile counsellor was probably the result of misunderstanding or inadvertence. The judge reasoned that the absence of deliberate deception by the juror negated any inherent prejudice on his part. Finally, he concluded that the jury and jury deliberations were not tainted through any demonstrable influence of Zaccaro upon the determination of his fellow jurors so as to prejudice defendant by deprivation of a fair trial by an impartial jury.
Manifestly, a finding either way on any of these fact issues could only be made after a full inquiry of not only the affected juror but all the members of the jury panel. The trial judge apparently avoided such an inquiry because of the applicable rule restricting parties and attorneys from interviewing jurors (R. 1:16-1) and the cases which hold that interrogation of jurors after a verdict is "an extraordinary procedure which should be invoked only upon a strong showing that a litigant may have been harmed by jury misconduct." State v. Athorn, 46 N.J. 247, 250, cert. den. 384 U.S. 962, 86 S.Ct. 1589, 16 L.Ed.2d 674 (1966). See also, State v. Kociolek, 20 N.J. 92 (1955); State v. Levitt, 36 N.J. 266 (1961); State v. La Fera, 42 N.J. 97 (1964). In any event, the judge proceeded without an evidentiary hearing to make the negative findings outlined above  findings which are not supported by the record.
Nevertheless, it becomes unnecessary to determine this appeal on the impropriety of the judge's findings because of the factual deficiency of the record.
*280 In our view, it is not essential in the determination of the issue in question to find that the juror's failure to respond to the voir dire inquiry was deliberate or that the juror was in fact prejudiced or that his background tainted his verdict or that of his fellow jurors. See Wright v. Bernstein, 23 N.J. 284, 295 (1957).
The key determinant is whether defendant has been deprived of a fair trial by jury by virtue of his inability to exercise a peremptory challenge because of the failure of the juror to make a candid response to the inquiry relating to a significant fact of potential bias. There can be little question that a guard in a penal institution is generally associated with a field of work encompassed by the generic term of "law enforcement."[1] Participation in the Juvenile Court system on a hearing board may be more equivocal with reference to its identification as law enforcement work.
In any event, the question was clear and important in the context of the criminal issue involved, and the silence of the juror, whether deliberate or inadvertent, was misleading to defendant and prejudiced him in a valuable incident of the trial process  the exercise of a peremptory challenge. See Photostat Corp. v. Ball, 338 F.2d 783, 785-786 (10 Cir.1964). Undoubtedly, if the information had been divulged, it is reasonable to assume that counsel for defendant would have challenged that juror on a peremptory basis even if a challenge for cause was unsuccessful.[2] The right of a peremptory challenge is as substantial as the right to a challenge for cause. The right to a fair and impartial jury is guaranteed by the Sixth Amendment of the Federal *281 Constitution and Art. 1, par. 9 of the New Jersey Constitution. The procedural safeguard of peremptory challenges to insure this fundamental right is codified for criminal trials in N.J.S.A. 2A:78-7 and R. 1:8-3(d).
In Wright v. Bernstein, supra, where a similar issue was at stake in the context of a civil case, the court observed:
The fundamental right of trial by a fair and impartial jury is jealously guarded by the courts. The jury is an integral part of the court for the administration of justice, and on elementary principles its verdict must be obedient to the court's charge based solely on legal evidence produced before it and entirely free from the taint of extraneous considerations and influences. The parties to the action are entitled to have each of the jurors who hears the case impartial, unprejudiced and free from improper influences. Panko v. Flintkote Co., 7 N.J. 55, 61, 80 A.2d 302 (1951).
What happened in this case had the effect of nullifying the purpose of the examination and was as effective as though the trial court had denied the right of challenge. The denial of the right of peremptory challenge is the denial of a substantial right. When it is not waived by conduct, it is prejudicial per se and harmful, and a party is not required to make an affirmative showing that the denial of his right to peremptory challenge had resulted in prejudice and injury to his cause of action on the merits. [23 N.J. at 294-295]
As the foregoing excerpt from Wright v. Bernstein points out, the denial of the right of peremptory challenge in the context of the subject matter of the question is "prejudicial per se and harmful". In effect, the misleading silence of the juror herein amounted to a denial of the right of peremptory challenge  a substantial right in the concept of a fair and impartial trial. State v. Jackson, 43 N.J. 148, 162 (1964), cert. den. sub nom. Ravenell v. New Jersey, 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572 (1965). And, as such, it warrants a new trial even in the absence of a showing of actual prejudice.
Other courts have reached the same result on a different basis. For example, the Third Circuit Court of Appeals in United States v. McCorkle, 248 F.2d 1 (1957), cert. den. 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957), in a proceeding arising out of a conviction affirmed by the *282 New Jersey Supreme Court in State v. Grillo, 16 N.J. 103 (1954), granted a writ of habeas corpus on the basis of the failure of a juror to reveal that he had been the victim of a robbery. The federal court in that opinion concluded that the undisputed fact that the juror was a robbery victim and that he did not disclose this on a voir dire directed to such disclosure constituted "colorable bias" and was therefore sufficient to taint the fairness of the trial without proof of actual bias or prejudice. See also, Jackson v. United States, 129 U.S. App. D.C. 392, 395 F.2d 615 (D.C. Cir.1968); Durham v. State, 182 Tenn. 577, 188 S.W.2d 555 (Sup. Ct. 1945).
Regardless of the labels which may be applied in articulating the reasons for reversal of a criminal conviction resulting from a trial where a juror has failed to respond to a voir dire question patently addressed to the possible existence of bias, the result must be the same. Whether the nondisclosure is designated as "prejudicial per se," presumptively harmful or "colorable bias," the conclusion is inescapable that defendant has been deprived of a fundamental right to a fair trial and that his conviction cannot stand.
We are mindful of the legal principle that a motion for a new trial is addressed to the sound discretion of the trial judge and that his determination thereof will not be reversed on appeal in the absence of a showing of abuse of discretion. R. 2:10-1; State v. Sims, 65 N.J. 359, 373-374 (1974). Nevertheless, when the error complained of involves the deprivation of a fundamental right of a party and does not relate to a trial occurrence which lends itself to superior evaluation by the judge on the scene, the denial of a new trial is error cognizable on appeal. See Wright v. Bernstein, supra, 23 N.J. at 296; State v. Kociolek, supra, 20 N.J. at 104-105; Panko v. Flintkote Co., supra, 7 N.J. at 62-63.
Judgment is reversed and case remanded for new trial.
NOTES
[1] N.J.S.A. 2A:154-4 grants full police status to correction officers of New Jersey. See also, Gloucester City v. Pub. Emp. Rel. Comm., 107 N.J. Super. 150 (App. Div. 1969), aff'd 55 N.J. 333 (1970); State v. Grant, 102 N.J. Super. 164, 168 (App. Div.), certif. den. 53 N.J. 62 (1968).
[2] Defendant had not exhausted his peremptory challenges.