622 A.2d 737

**Barry A. JEFFERSON-EL**

v.

**STATE of Maryland.**

**No. 63, Sept. Term, 1992.**

Court of Appeals of Maryland.

April 6, 1993.

100

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Mary O'Malley Lunden, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

We granted the petition for writ of certiorari filed by Barry A. Jefferson–El, the petitioner, to consider when a

trial judge, accused by a defendant of being partial against him, must grant the defendant's recusal motion to avoid the appearance of impropriety. A divided panel of the Court of Special Appeals held, in an unpublished opinion, that the facts and circumstances of the present case did not mandate recusal. We shall reverse.

## I.

Because, to a significant degree, the issue involves appearances, it is necessary that we set out in some detail the circumstances under which it arose. In 1986, the petitioner, having been convicted of robbery with a deadly weapon and theft, was sentenced in the Circuit Court for Baltimore City, by Judge Edward Angeletti, to concurrent terms of fifteen years imprisonment, nine of which were suspended in favor of five years probation. He was released from incarceration on April 14, 1990 and, thereafter, charged with burglary, rape, and other related sex offenses. He was acquitted of all counts following a jury trial presided over by Judge Angeletti. Judge Angeletti then addressed the jury:

I just hope the ladies and gentlemen, that you had a very good reason for the verdict that you rendered in this case. You know, you're supposed to be protecting the community. I hope and pray that when you go home tonight and you think about this situation, and think about what you've just done. That you believe that you've protected this community.

On behalf of the court, we extend our thanks to you for your service. But I can tell you that your verdict is an abomination, and it has no relationship to reality [or] justice. I want you, all of you, the ladies on this jury to think about what you've just done.

On the next day, at the State's request, Judge Angeletti issued a warrant charging the petitioner with violating Rule

8 of his probation.[1] The application for warrant alleged that the petitioner admitted, during trial, using, buying, and selling cocaine.

When the revocation proceedings were called, the following occurred:

The Court: Ms. Croyder [the prosecutor] is present. I don't know if it's necessary for Ms. Croyder to testify in this case, Mr. Parker [defense counsel], because I presided over the trial. This defendant under oath came in and testified to the statements made by him on the witness stand and as a result of the statements he made in that case, a jury entered a verdict of not guilty of the charge of a very serious charge of rape. The Court is fully aware of those facts. He's charged with the violation of Rule 8. Does he admit or deny that violation, Mr. Parker?

Mr. Parker: First of all, your Honor—

The Court: That's using drugs while he was on probation.

Mr. Parker: While he's on probation?

The Court: That's correct, sir.

Mr. Parker: Mr. Jefferson first, he would ask your Honor to recuse himself from this matter.

The Court: Motion denied. Mr. Parker, I had this case. He was found not guilty in front of this court and this court will not recuse itself in this case.

Mr. Parker: For the record, I want to put the reasons on the record.

The Court: Put all the reasons on the record you would like, sir.

Mr. Parker: Your Honor, you were the judge before the pending case that he had involving an accusation of a rape. After which, Mr. Jefferson says that you made certain remarks to the jury concerning him which were prejudicial and he has also filed complaints to the Judicial

---

1. The application for probation violation warrant also charged a violation of Rule 5, "notify his probation agent at once, if arrested[.]" This violation was not pursued at the violation proceedings.

Disabilities Committee. I'm going to ask if Mr. Jefferson would put his reasons on the record why he thinks Judge Angeletti would not be impartial in this case and to recuse himself....

The Defendant: My name is Barry Jefferson and I would ask that the Honorable Judge Angeletti recuse himself from the hearing in my case due to the fact on 2–12–1991, I was before the Honorable Judge Angeletti on first degree rape and the jury found me not guilty on all the counts and the Honorable Judge Angeletti said to the jury and as quoted, I don't know what y'all verdict was based on because it was not the evidence or the truth. But what I want you to know is that you are an abomination to society and at that point, I filed a complaint to the Commissioner on Judicial Disabilities. I filed a copy with the NAACP legal department because I view it as a racial discrimination thing, whereas the prejudice statement and I don't feel like I'm receiving a just hearing before this judge on this date. Those are my reasons.

The Court: Well what may have occurred insofar as what took place after you were found not guilty, Mr. Jefferson, is not relevant on the issue of the charge against you in this case and in this case, you are charged with having violated Rule 8 of the rules of probation and that is using drugs, controlled dangerous substances, while you were on probation and one has nothing to do with the other and the court will deny your motion to recuse itself.

The majority of a panel of the Court of Special Appeals affirmed. Judge Moylan perceived the issue to be a simple one—whether the trial court abused its discretion in denying the petitioner's recusal motion. He concluded that there was no abuse. Concurring, Judge Davis recognized that there could be an issue of appearance of impropriety, but believed "that no harm inured to the appellant in the context in the particular proceeding, *i.e.*, a violation of probation hearing, the grant of probation being, as the majority opinion reminds us, a matter of grace than of

right."[2] Dissenting, Judge Alpert was troubled by the "tone" of both the trial, as reflected in Judge Angeletti's statements to the jury, and the probation violation proceedings. He observed:

> although there was no actual impropriety in Judge Angeletti's hearing the probation revocation after presiding at the trial giving rise to the alleged violation, given his strong view of the jury's verdict in the rape trial ("an abomination"), he should have declined to hear the probation revocation to avoid the appearance of impropriety.... One could reasonably assume that the trial court believed that appellant committed perjury during the February 12, 1991 trial. Thus, it would appear to a reasonable person that Judge Angeletti was not going to allow "the very intelligent and articulate" Mr. Jefferson–El to talk his way out of trouble again.

Applying the objective standard, Judge Alpert concluded "that a reasonable person, knowing and understanding all the relevant facts herein, would recuse the trial court."

II.

 A defendant in a criminal case has a right to a fair trial. *Spence v. State,* 296 Md. 416, 423, 463 A.2d 808, 811 (1983); *Scott v. State,* 289 Md. 647, 655, 426 A.2d 923, 928 (1981); *Smith v. State,* 64 Md.App. 625, 635, 498 A.2d 284, 289 (1985). *See also Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710 (1967). It is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge. *Boyd v. State,* 321 Md. 69, 78, 581 A.2d 1, 9 (1990); *In re Turney,* 311 Md. 246, 253, 533 A.2d 916, 920 (1987); *Costello v. State,* 237 Md. 464, 104, 206 A.2d 812, 817 (1964); *Thanos v. Superintendent,* 204 Md. 665, 667–68, 104 A.2d 926, 927 (1954); *Bd. of Medical Examiners v. Steward,* 203 Md. 574, 581, 102 A.2d 248, 251–52 (1954); *Western Md.*

---

**2.** Judge Davis noted that the trial judge violated Maryland Rule 1231, Canon 3 A(8), which proscribes praising or criticizing a jury's verdict.

*Dairy Corp. v. Brown*, 169 Md. 257, 268, 181 A. 468, 473–74 (1935). "A fair and impartial trial is a judicial process by which a court hears before it decides; by which it conducts a dispassionate inquiry and renders judgment only after receiving evidence." *Spence*, 296 Md. at 423, 463 A.2d at 811, citing *People v. Diaz*, 1 Ill.App.3d 988, 275 N.E.2d 210, 212–13 (1971). "It is beyond dispute that the trial judges perform a unique and persuasive role in that system: 'confidence in the judiciary is essential to the successful functioning of our democratic form of government.'" *Scott v. U.S.*, 559 A.2d 745, 748 (D.C.App.1989), citing *U.S. v. Quattrone*, 149 F.Supp. 240, 242–43 (D.D.C.1957).

■ It is because judges occupy a distinguished and decisive position that they are required to maintain high standards of conduct. *Dempsey v. State*, 277 Md. 134, 149, 355 A.2d 455, 463 (1976); *Patterson v. State*, 275 Md. 563, 579, 342 A.2d 660, 669 (1975); *See also Elmer v. State*, 239 Md. 1, 10–11, 209 A.2d 776, 781–82 (1965); *Vandergrift v. State*, 237 Md. 305, 311, 206 A.2d 250, 254 (1965). Their conduct during a trial has a direct bearing on whether a defendant will receive a fair trial because their opinion or manifestations thereof usually will significantly impact the jury's verdict. In addition, if the defendant has elected to be tried by a jury, it is the province of that jury to decide the guilt or innocence of the defendant.

Maryland Rule 1232, Canon 3 C of the Maryland Code of Judicial Conduct, provides, in pertinent part:

(1) A judicial appointee should not participate in a proceeding in which the judicial appointee's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judicial appointee has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding.

■ The canon has not been interpreted to require a trial judge, who has presided over a prior case, involving the same defendant or incident, automatically to recuse him

or herself from presiding over a subsequent trial involving the defendant. *Boyd,* 321 Md. at 74–75, 581 A.2d at 3–4; *Doering v. Fader,* 316 Md. 351, 355, 558 A.2d 733, 735–36 (1989). This is so because there is a strong presumption in Maryland, *Boyd,* 321 Md. at 80, 581 A.2d at 6; *Fader,* 316 Md. at 355, 558 A.2d at 735, and elsewhere, *see e.g. U.S. v. Sidener,* 876 F.2d 1334, 1336 (7th Cir.1989); *State v. Aubert,* 118 N.H. 739, 393 A.2d 567, 568 (1978), that judges are impartial participants in the legal process, whose duty to preside when qualified is as strong as their duty to refrain from presiding when not qualified. *Boyd,* 321 Md. at 74, 581 A.2d at 3; *Fader,* 316 Md. at 360, 558 A.2d at 738. The recusal decision, therefore, is discretionary, *Surratt v. Prince George's County,* 320 Md. 439, 465, 578 A.2d 745, 757–58 (1990), and the exercise of that discretion will not be overturned except for abuse. *Id. See also In re Turney,* 311 Md. at 253–54, 533 A.2d at 920–21.

To overcome the presumption of impartiality, the party requesting recusal must prove that the trial judge has "a personal bias or prejudice" concerning him or "personal knowledge of disputed evidentiary facts concerning the proceedings." *Boyd,* 321 Md. at 80, 581 A.2d at 6–7. Only bias, prejudice, or knowledge derived from an extrajudicial source is "personal". *Boyd,* 321 Md. at 75–80, 581 A.2d at 3–6; *Fader,* 316 Md. at 356, 558 A.2d at 736. Where knowledge is acquired in a judicial setting, or an opinion arguably expressing bias is formed on the basis of information "acquired from evidence presented in the course of judicial proceedings before him," neither that knowledge nor that opinion qualifies as "personal." *Boyd,* 321 Md. at 77, 581 A.2d at 5 (quoting *Craven v. U.S.,* 22 F.2d 605, 607–08 (1st Cir.1927); *Fader,* 316 Md. at 356, 558 A.2d at 736.

■ On the other hand, the canon recognizes that the appearance of impropriety ought to be avoided as well. In *Boyd,* we acknowledged the importance of the judicial process not only being fair, but appearing to be fair. 321 Md. at 85–86, 581 A.2d at 9. Although we determined that there was no appearance of impropriety in that case, we set forth

the proper test to be applied when making that determination:

> [T]he test to be applied is an objective one which assumes that a reasonable person *knows and understands all the relevant facts. . . .* We disagree with our dissenting colleague's statement that recusal based on an appearance of impropriety . . . "requires us to judge the situation from the viewpoint of the reasonable person, and not from a purely legalistic perspective." Like all legal issues, judges determine appearance of impropriety—not by what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.

*Id.* at 86, 581 A.2d at 9 (quoting *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1313, (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989).

The appearance of impropriety aspect of the canon was before the Court in *Surratt v. Prince George's County,* 320 Md. 439, 578 A.2d 745 (1990) and *In re Turney,* 311 Md. 246, 533 A.2d 916 (1987). In *Surratt,* a judge denied a recusal motion filed by a female attorney who alleged that he had engaged in misconduct, *i.e.,* that he made sexual overtures to her and retaliated when she refused them. 320 Md. at 463, 578 A.2d at 757. Stating that the standard for assessing the allegations is an objective one, the Court observed that "a judge will be disqualified in any case in which his or her partiality is *reasonably questioned* on the basis of personal misconduct." *Id.* at 468, 578 A.2d at 759 (emphasis added).

Applying a similar standard in *Turney,* we held that a judge should have recused himself, on his own motion, to avoid the appearance of impropriety. In that case, a very close friend of his former wife's stepson was on trial for possessing a forged driver's license and he was aware that the source of the license was his former wife's stepson.

311 Md. at 250–54, 533 A.2d at 920–21. We concluded that "a reasonable member of the public knowing all the circumstances would be led to the conclusion that the judge's impartiality might reasonably be questioned." *Id.* at 253, 533 A.2d at 923.

### III.

In the case *sub judice,* what the trial judge thought of the jury's verdict acquitting the petitioner is not left to speculation; what he said to the jury after the verdict was rendered—calling it "an abomination" and otherwise criticizing it and the jury—left no doubt as to his displeasure. That speech also violated Canon 3 A(8).

A member of the community, aware of the prohibition against a trial judge either praising or criticizing a jury's verdict, who witnessed this trial judge addressing the jury immediately after it had acquitted the petitioner, reasonably could conclude that he could not impartially preside over a subsequent trial involving that defendant. From his remarks, it could be inferred that the judge believed either that the petitioner committed perjury or otherwise "hoodwinked" the jury, escaping all punishment for the crime the judge believed he committed. It could further be inferred, reasonably, that given the opportunity, unfettered by a jury, the trial judge was determined not to allow similar tactics to effect the same result.

The reasonableness of the inferences in that regard is buttressed by what occurred at the violation proceedings. Aside from issuing the warrant within a day of the verdict, certain of the court's comments are instructive. In calling the case, the court not only indicated that he presided over the trial, but that "this defendant under oath came in and testified to the statements made by him on the witness stand and as a result of the statements he made in that case, a jury entered a verdict of not guilty of the charge of a very serious charge of rape. The court is fully aware of those facts." In denying the motion to recuse, the court

informed defense counsel, "I had this case. He was found not guilty in front of this court and this court will not recuse itself in this case."

## IV.

■ The State is correct, where the issue is the bias of a trial judge against a defendant, to be a basis for recusal, the bias must have derived from a "personal," rather than a judicial, source. *Boyd*, 321 Md. at 76, 581 A.2d at 4. It is also correct that, in this case, any bias that the trial judge displayed toward the petitioner had its genesis in the rape trial; hence, it was not, in any sense, "personal." That is dispositive of the question whether the trial court on account of prejudice or bias could preside in a subsequent case concerning the petitioner. The source of the bias is not dispositive when the issue is whether, having made statements evidencing bias against the defendant and/or his or her cause, the trial judge thereby created a situation in which it would appear that he could not, with impartiality, preside at any subsequent trial. The importance of the court's remarks to the jury and those made preliminary to the start of the violation proceedings is not to demonstrate that the trial judge was personally biased against the petitioner; rather, they are relevant on the issue of whether a predicate for demonstrating the appearance of impropriety that the petitioner alleges is fatal to the trial judge's presiding in this case, has been established. It is that aspect of the rule on which we focus to determine if the trial judge should have recused himself. Viewed from that aspect, the petitioner is correct.

The concurring opinion in the Court of Special Appeals asserts that whether the trial court should have recused itself to avoid an appearance of bias depends upon the nature of the proceedings. It suggests that a judge's partiality is more reasonably questioned when he or she presides over a trial on the merits, rather than a violation of probation proceeding. That analysis misses the point.

■■■■ Violation of probation proceedings consist of "two distinct components: (1) a retrospective factual question whether the probationer has violated condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Wink v. State*, 317 Md. 330, 332, 563 A.2d 414, 415 (1989). A finding that a defendant has violated probation does not automatically or necessarily mean that that defendant's probation must be revoked. *Id.* at 338–39, 563 A.2d at 418; *Smith v. State*, 306 Md. 1, 7, 506 A.2d 1165, 1168 (1986). The decision to revoke probation rests with the sound discretion of the trial court, exercised in light of the existing circumstances. *Wink*, 317 Md. at 338–39, 563 A.2d at 418; *Smith*, 306 Md. at 7, 506 A.2d at 1168. Only if the trial court abuses its discretion will the trial court's exercise of discretion be overturned. *Wink*, 317 Md. at 338, 563 A.2d at 418; *Smith*, 306 Md. at 11, 506 A.2d at 1170.

■■■■ On the factual issue, there was clear evidence of drug abuse during the probationary period. That evidence came from the petitioner himself and was not contradicted. It was clearly sufficient to justify a finding that the petitioner violated the condition of his probation prohibiting use of drugs during the probationary period. It may be, therefore, that any trier of fact, even one not predisposed against the petitioner, would find a violation of probation on these facts. But that does not end the inquiry.

The discretionary aspect of the violation proceedings requires that the trial court, after resolving the factual issue against the defendant, determine whether to revoke or continue probation. No matter how "cut and dried" the factual issue may be, the court nevertheless must consider those options in light of the total circumstances. This aspect of the proceeding, therefore, is more susceptible to an appearance of impropriety; even when a defendant admits violating a condition of probation, the trial court may still appear to be predisposed, at all costs, to revoke probation and to impose part or all of the suspended sentence. In

that case, the question would be whether a reasonable person, knowing and understanding those circumstances and all relevant facts, reasonably could conclude that the trial court was predisposed to revoke probation whatever the circumstances.

In this case, Judge Angeletti had forcefully expressed his displeasure that a jury had acquitted the petitioner of serious criminal charges, a fact upon which he focused when calling the case and, again, when denying the petitioner's recusal motion. A person knowledgeable of all the facts reasonably could, and probably would, infer that, with Judge Angeletti presiding, the revocation of the petitioner's probation was inevitable. When such an inference is permissible, the administration of justice, as well as the petitioner's right to a fair hearing is placed in jeopardy and, in fact, demands that the trial court recuse itself.[3]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTION TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW VIOLATION HEARING BEFORE ANOTHER JUDGE.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

---

**3.** To be sure, Maryland Rule 4–347(e) does require that, "whenever practicable, the hearing shall be held before the sentencing judge." While that requirement reflects "a clear presumption in favor of having the hearing before the sentencing judge," majority opinion, slip op. at 104, it does not trump Canon 3 C(1)'s requirement that a judge ". . . not participate in a proceeding in which [the judge's] impartiality might reasonably be questioned."