926 A.2d 792

**Terrance SCOTT**

v.

**STATE of Maryland.**

**No. 1076 Sept. Term, 2005.**

Court of Special Appeals of Maryland.

June 28, 2007.

132

[black redaction bars]

Claudia A. Cortese (Nancy S. Forster, Public Defender, on the brief), Baltimore, MD, for Appellant.

Sarah Page Pritzlaff (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, MD, for Appellee.

Panel: JAMES R. EYLER, SHARER and WOODWARD, JJ.

SHARER, Judge.

A jury in the Circuit Court for Baltimore City convicted Terrance Scott of possession with intent to distribute heroin, cocaine, and marijuana.[1] On appeal, Scott raises three issues, which we have rephrased:

I. Whether the trial court abused its discretion in denying the defense motion for a new trial, based on a claim of juror misconduct.

II. Whether the evidence is sufficient to sustain Scott's convictions.

III. Whether the trial court abused its discretion by denying a motion to recuse.

For the reasons that follow, we shall affirm the judgments of the circuit court.

## FACTUAL BACKGROUND

The jury heard testimony from Detective Mark Lunsford, of the Baltimore City Police Department, that, on February 21, 2003, he was working in an undercover capacity in a parked

---

1. The trial court sentenced Scott to 20 years in prison for the possession with intent to distribute heroin, with the initial 10 years to be served without the possibility of parole; a concurrent 20 years in prison for the possession with intent to distribute cocaine; and a concurrent five years for the possession with intent to distribute marijuana.

car in the 500 block of Laurens Street. Shortly after 3:00 pm, a black Chevrolet Malibu parked about 20 feet in front of Lunsford's car. The driver of the Malibu, later identified as Terrance Scott, got out and opened the trunk. He then stood by the back of the vehicle.

While Scott was standing next to the open trunk, a man approached and handed him what Lunsford described as "U.S. currency in bill form." After Scott accepted the cash, he "reached in the trunk [and] . . . handed . . . this black male small items, which were consistent in size and shape of street level packaged narcotics." Scott then closed the trunk and walked towards a nearby store.

Lunsford formed the opinion that he had just witnessed a narcotics transaction, and called for an arrest team. When the arrest team arrived, Lunsford exited his car and together they arrested Scott "right by the store." A search incident to the arrest yielded $237 in currency and a "remote car opening device."

Scott denied that he had been driving the Malibu, and explained that the keys he had been holding belonged to a cousin, and that he had driven his cousin's car without permission. Lunsford took the keys from Scott and operated the remote, which unlocked the vehicle. The passenger compartment of the car was searched, and police found a temporary vehicle registration in Scott's name, 81 vials of a substance later identified as cocaine, and four bags of marijuana. Recovered from the trunk were 244 gel-caps containing heroin. Scott was taken into custody and the vehicle was towed from the scene.

Lunsford, who was accepted by the court as an expert in the fields of drug enforcement, identification, packaging, and street-level narcotics distribution, opined that, based on his training and experience, the drugs were packaged not for personal use, but for distribution. One of the arrest team members, Detective Kenneth Ramberg, testified that the keys recovered from Scott fit the black Malibu.

The jury also heard from Savitri Sharma, a criminologist with the Baltimore City Police Department, who was accepted

as an expert in the analysis of controlled dangerous substances. Her analysis of the contraband was recorded on a Baltimore City Police Department Form No. 442 Drug Analysis Report, which was admitted as State's Exhibit 41. Surveying "trace" amounts, Sharma reported, and testified at trial, that the samples tested positive for heroin, cocaine, and marijuana.

The defense presented the testimony of two witnesses who contradicted the State's case, especially the State's theory that Scott had driven the Malibu. Latasha Young recounted that, as she looked out of her window overlooking the scene, she saw Scott walk up the street and enter a store. She denied seeing Scott drive the Chevrolet Malibu, and further denied seeing any drug transaction. Damon Bowen said that he was "job hunting" with Scott that day. He recounted that they drove to Laurens Street that afternoon in Bowen's green Grand Cherokee, and that they both went into the store that was owned by Bowen's uncle.

We shall review additional facts as they relate to the issues raised on appeal.

## DISCUSSION

### *1. Whether the trial court abused its discretion in denying the defense motion for a new trial, based on a claim of juror misconduct.*

Scott moved for a new trial, primarily on a claim of juror misconduct, arguing that juror number 496 failed to respond truthfully to a *voir dire* question. After a hearing, the court denied his motion.

Scott asserts that, subsequent to the verdict, the defense learned that juror number 496 had a "negative history with Mr. Scott with respect to her sons." Scott also maintains that this juror "instilled a fear of the defendant" that caused the members of the jury to express "concern for their safety." [2]

---

**2.** We find no support for Scott's contention that the juror in question influenced the jury by causing them to fear Scott. Shortly before

He maintains, therefore, that because of the asserted juror misconduct, the trial court "erred" by denying his motion for a new trial. We are not persuaded.

■ We review the trial court's denial of Scott's motion for a new trial based on juror misconduct for an abuse of discretion. *Jenkins v. State*, 375 Md. 284, 298–99, 825 A.2d 1008 (2003).

During the jury selection process, the court asked the prospective jurors whether anyone knew the defendant. Prospective juror 496 did not respond to this query, but did respond in the affirmative when later questioned about another matter.

In his motion for a new trial, Scott asserted in part that "a juror did not answer truthfully to *voir dire* posed to the panel; namely . . . [that she] did not stand when asked by the Court whether she knew Mr. Scott, and it has been revealed on information and belief that [the juror] in fact has known or known of Mr. Scott for many years." The motion was initially summarily denied by a chambers judge, and then heard fully by the trial judge at the disposition hearing on June 13, 2005.

### The Motion Hearing

The transcript of the hearing on Scott's motion for a new trial reflects the following:

[DEFENSE COUNSEL]: . . . Your Honor . . . [w]e did not receive any response to [our subpoena request for information about the juror] in our office and what we wanted to do, Your Honor, was we wanted to subpoena Juror No. 496. . . . And what we had learned after the trial was that [the juror]

---

returning its verdict, the jury sent out a note informing the trial court that a member of the jury heard someone, not a juror, remark "he's not guilty brother" as the juror walked past. After the verdict was read, the trial court released the jury but required the others to remain in the courtroom for ten minutes. The court admonished defense counsel to "instruct this family I don't want any conversation or any remarks again to any of these jurors when they pass by or anything else." There is no basis in the record for the suspicion that juror number 496 prompted this concern.

has a history with Mr. Scott and that came to our attention after the trial as well as the specifics of that history. Your Honor, on information [and] belief the defense has learned that [the juror] has a negative history with Mr. Scott with respect to her sons. Her sons and Mr. Scott used to be in the same neighborhood. They used to run together and there is a negative history between [the juror's] children and Mr. Scott. After the jury verdict was read and after the jurors were about to, actually right before they were about to be released there came a note to the court where the jurors were expressing some concern over their safety.

\* \* \*

We believe it was [juror 496] who had precipitated that concern among the jurors. She knows Mr. Scott. She did not disclose any of that information [on] *voir dire. . . .* Your Honor, we wanted to subpoena [the juror] to question her. I never received this. I would have made every attempt in the world to get [the juror] here today for this motion for a new trial for her testimony.

\* \* \*

She did not stand up when it was asked whether or not she knew him.

THE COURT: . . . we agree on that.

[DEFENSE COUNSEL]: And, Your Honor, what we wanted, I'm sorry—

THE COURT: Let me finish. And now of course you're stating that it's, I believe the words you use is has known or known of Mr. Scott for many years. There's really a, I don't know who knew this. I assume you're getting this from your client and if so, he probably knew it all along all through the trial, if that's true and he didn't say anything. I mean when did he suddenly have this sudden shot of enlightenment? And the other problem I have is that you're asking me to disregard that whether or not the juror was truthful or not and I have to then look at whether or not your client is a truthful person or is trying to get out of

this trial. And in this case it's obvious that the jury didn't believe him. . . .

* * *

And you come into court and I'm supposed to grant a motion for a new trial based upon the belief that your client suddenly discovered after the trial was over that this child of this woman had disputes with somebody connected with his family and didn't like him in the neighborhood.

[DEFENSE COUNSEL]: Well, if I could clarify my exact request at this point. Because I did not receive a copy of the certificate of record what I'm simply asking, Your Honor, is to be given the opportunity to summons [the juror] and bring her before the court to find out exactly what she knew, if anything, about Mr. Scott on the day of trial. That's what I'm asking.

The trial judge inquired about Scott's address and that of the juror, and pointed out that these addresses were "far apart." Defense counsel reiterated his request to question the juror at a hearing about the extent, if any, of her knowledge, and again complained that the jury commissioner failed to respond to his subpoena. The trial judge then inquired about the nature and extent of Scott's knowledge of this juror:

THE COURT: When did your client tell you this?

[DEFENSE COUNSEL]: My client intimated to me at the close of evidence that he suspected he knows who that juror is. He did not give a name. He just said—

THE COURT: When did he tell you this? When?

[DEFENSE COUNSEL]: At the close of evidence.

THE COURT: Close of evidence.

[DEFENSE COUNSEL]: He suspected he knew who that person was.

THE COURT: Did you bring this to my, did you bring this to my attention when I could have asked the juror once the juror was in the courtroom?

[DEFENSE COUNSEL]: I did not bring it to your attention, Your Honor, because he did [not] give me information. He just simply said, I suspect I know who that person is.

THE COURT: When I not only had the jury in the courtroom but I also still had alternates in the courtroom.

[DEFENSE COUNSEL]: And it wasn't until afterwards. It wasn't until everything had closed that the family came back days later with more specific information about who this person was. *And yes, Your Honor, I will grant you that. I will grant you that, that once there was a suggestion even the remotest hint that there could be some knowledge between these two individuals I should have come up to the court. That's right. I should have done that.* [Emphasis added.]

THE COURT: What's your position?

\* \* \*

[PROSECUTOR]: The Court of Special Appeals in *Burkett* [*v. State,* 21 Md.App. 438, 319 A.2d 845 (1974) ] said they look dis-favorably [sic] upon challenges to juror prejudice after the defendant has been convicted. In this case the defense knew prior to that conviction that the defendant might know this person, that they might have some history and I think the defense has waived their right to challenge that juror by not bringing that up prior to the close of the trial prior to that guilty verdict. And Your Honor, I will also point out the defendant participated in the entire voir dire process. If he recognized this [juror], likely he recognized her the very first time that she stood up and this juror came to the bench to answer a different question. The defendant was at the bench with his counsel. He had an opportunity at that time to say also, I know this person and to question her about the relationship. That didn't happen. Your Honor, it's the State's position that the defendant knew the entire time of whatever relationship he may have to [the juror]. The defendant possibly thought . . . knowing [the juror] would [be] to his benefit and so he decided not to say anything and now he's been convicted and all of a sudden it's an issue.

* * *

THE COURT: I might point out that the defendant did not take all the strikes that were available to him ... and if there was any doubt in his mind that there might have been some reason why this Juror ... might have known him through ... family, through [the] neighborhood, then he could have, you could have done something at that time. It seems like this is another way to try to avoid the verdict. In addition to that everything you've told me doesn't add up. The addresses are entirely different including the current address of the juror but including the past address of the juror. Motion for a new trial is denied.

### The Need for Juror Candor

The Court of Appeals has recently emphasized that "[v]oir dire is critical to assure that the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantees to a fair and impartial jury will be honored." *Stewart v. State*, 399 Md. 146, 158, 923 A.2d 44 (2007) (citing cases). The Court added in *Stewart* that " '[w]ithout an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.' " *Id.* (quoting *Rosales–Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981)).

In *Williams v. State*, 394 Md. 98, 904 A.2d 534 (2006), the Court addressed the issue of whether the defendant was entitled to a new trial because of juror misconduct. The juror at issue in *Williams* failed to disclose that a member of her family was employed as a secretary in the office of the State's Attorney charged with prosecuting Williams. *Id.* at 101, 904 A.2d 534. The juror had not been questioned about her failure to answer the *voir dire* inquiry. Nevertheless, after hearing argument, the trial court concluded that the relationship was "pretty remote; a sister of a secretary in the State's Attorney's Office." *Id.* at 105, 904 A.2d 534. The trial judge denied the motion for new trial.

The Court of Appeals granted a writ of certiorari before oral argument in this Court. Writing for the Court, Chief Judge Bell emphasized the defendant's right to trial by an impartial jury, and pointed out that " 'one of the ways to protect a defendant's constitutional right to an impartial jury is to expose the existence of factors which could cause a juror to be biased or prejudiced through the process of *voir dire* examination.' " *Id.* at 107, 904 A.2d 534 (quoting *Jenkins v. State,* 375 Md. 284, 331, 825 A.2d 1008 (2003)). The Court emphasized that "[i]f there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect the juror's decision of the case, or 'any circumstances which may reasonably be regarded as rendering a person unfit for jury service,' the defendant may challenge that juror for cause, and, if that fails, strike him or her peremptorily." *Id.* at 108, 904 A.2d 534. (citations and footnote omitted).

The Court of Appeals reviewed decisions of this Court wherein the trial judge had examined the jurors in question before exercising its discretion to grant or refuse further relief. *See Leach v. State,* 47 Md.App. 611, 425 A.2d 234 (1981); and *Burkett v. State,* 21 Md.App. 438, 319 A.2d 845 (1974). Unlike those cases, the trial court in *Williams* made "no comparable inquiry as a predicate [for the exercise of discretion]." *Williams, supra,* 394 Md. at 112, 904 A.2d 534. The Court held:

> We endeavor to be clear on this point. Where the juror is available for further voir dire and is further voir dired, a trial court may exercise the discretion *Burkett* requires it to exercise. But, the trial court's sound discretion can only be exercised *on the basis of the information that the voir dire reveals and the findings the trial court makes as a result.* On the other hand, where the juror is not available or is not voir dired, there simply is neither a basis for the findings of fact, which must form the predicate for the exercise of discretion, nor for the exercise of discretion that *Burkett* contemplates. That the trial court may believe that it is "pretty remote" that an answer to a voir dire question would uncover bias or prejudice does not, and cannot,

replace the need for the court to make findings of fact on the issue.

We hold that, where there is a non-disclosure by a juror of information that a voir dire question seeks and the record does not reveal whether the non-disclosure was intentional or inadvertent, the defendant is entitled to a new trial. That the disclosure would not automatically have required a strike for cause does not matter; it is the inability of the defendant to have the benefit of a further investigation by the court, he or she being deprived of the ability to delve into the juror's state of mind for bias and of a finding in that regard, that is decisive. The perceived "remoteness" of the potential bias does not preclude bias; without a finding of fact in confirmation, it cannot be a sufficient reason to deny a new trial.

*Williams,* 394 Md. at 113–15, 904 A.2d 534 (footnotes omitted).

### *Waiver*

 On the record before us, however, we need not reach the issue of whether the assertion that the juror's children had "negative issues" with Scott would be sufficient to prompt the factual inquiry that he sought from the trial court, and that *Williams* requires. We reach that conclusion because it is clear that, on these facts, Scott has waived any complaint about a jury that included the juror in question. Notwithstanding counsel's acknowledgment that he should have alerted the trial court to a potential conflict, Scott and his counsel chose to remain silent, apparently hoping for a favorable verdict, rather than bring the matter to the court's attention at a time when the problem could have been resolved. The trial court emphasized that, until the jury retired to deliberate, there were alternate jurors available to replace juror 496.

The Court of Appeals has made clear in *Williams* that, in the circumstance of a possibly compromised juror, the trial court must afford a defendant the opportunity to be heard before ruling on a motion for new trial. Nonetheless, we do not find in either *Williams or Burkett,* or other Maryland cases, a discussion of whether, in given circumstances, a

defendant can waive that right by not acting on information known to him. Put another way, can a defendant, possessed of information that might disqualify a juror, withhold that information until after the verdict and then assert it as a basis for a new trial? Other jurisdictions, however, have taken up the question.

In *State v. Bianco*, 391 N.J.Super. 509, 918 A.2d 720 (App. Div.2007), the New Jersey intermediate appellate court addressed the issue of whether the trial court erred in denying a defense motion for a new trial because of a juror's failure to disclose his past acquaintance with the defendant and a relative of the victim. The juror had realized during deliberations that he *knew* the defendant, but did not come forward. The trial court conducted a hearing on defendant's motion for a new trial, and concluded that the juror had not recalled, during *voir dire*, that the defendant or the victim's grandmother were known to him. The court also made a factual finding that, during the trial, the defendant was aware that the juror knew him. In denying the motion, the trial court also found that defendant had made a "strategic decision" not to raise the matter during trial. The New Jersey appellate court affirmed.

Although the trial court in *Bianco* conducted a hearing on the misconduct claim, and no examination of the juror was conducted in the case *sub judice*, we consider the *Bianco* case to be instructive because one of the alternate bases for the appellate court's affirmance in *Bianco* was the defense's waiver of the issue. The appellate court discussed its earlier opinion in *State v. Thompson*, 142 N.J.Super. 274, 361 A.2d 104 (App.Div.1976), a case cited by the Court of Appeals in *Williams*. The New Jersey court's treatment of this issue is apposite:

When the court and counsel are misinformed, or inadequately informed, and the parties' ability to exercise peremptory challenges is infringed, then it may be said that there has been a deprivation of the parties' fundamental right to a fair trial. *State v. Thompson*, 142 *N.J.Super.* 274, 282, 361 A.2d 104 (App.Div.1976). It matters not, in this regard, whether

the juror's omission or misstatement is deliberate or, as here, unintentional. *Id.* at 280, 361 A.2d 104.

The failure of voir dire to produce accurate information, however, does not compel the granting of a new trial in all cases. This case presents circumstances which fully support the judge's denial of the motion for a new trial. First, because defendant was aware, prior to the verdict, of the juror's omission, and remained silent until after the verdict was rendered, he waived his right to complain.

\* \* \*

Although the need to obtain accurate information during jury selection cannot be understated, a defendant may waive the right to complain about shortcomings in the selection process, or of a juror's failure to disclose information, if defendant knowingly failed to seek the juror's removal prior to the rendering of the verdict.... Although our courts have not decided this precise issue, we conclude that defendant's knowing failure to speak prior to the jury's verdict constitutes a waiver of his right to later complain of Juror 11's continued participation in the case, as all other courts, which have encountered this circumstance, have concluded.

\* \* \*

In generally adhering to the waiver concept expressed by these federal and state courts, we conclude that when a defendant knows a juror has failed to reveal during voir dire that he and defendant were once acquainted, he has waived the right to later complain of the juror's continued service on the jury.

*Bianco, supra,* 918 A.2d at 725–26 (citing cases).

In *United States v. Rivera,* 295 F.3d 461 (5th Cir.2002), a juror was sleeping, and the jury alerted the court to this fact. The presiding judge had not seen the juror nodding off, and with defense counsel's approval, advised the jury not to concern itself about it. In the motion for new trial, it was asserted that the defendant had an unobstructed view of the sleeping juror. The district court rejected this challenge, and the court of appeals affirmed.

We review a district court's denial of a motion for a new trial for abuse of discretion. *See Hansen v. Johns–Manville Prods. Corp.,* 734 F.2d 1036 (5th Cir.1984) (examining claims of juror misconduct). We have repeatedly held that defense counsel must call any juror inattentiveness to the attention of the court when it is first noticed. *See, e.g., United States v. Curry,* 471 F.2d 419, 422 (5th Cir.1973) (holding that "[d]efense counsel had a duty to call a juror's inattentiveness to the court's attention when first noticed. Counsel may not permit juror misconduct or inattentiveness to go unnoticed, thereby sewing a defect into the trial, and later claim its benefit") (citations omitted); *United States v. Baker,* 609 F.2d 134, 139 (5th Cir.1980) (holding that any juror misconduct claims were waived when "defendants' respective counsel did not mention the point until the jury had retired, and did not urge the court to ascertain whether the juror was actually asleep").

In Rivera's motion for a new trial, his counsel stated that he had an unobstructed view of the juror and witnessed the juror periodically closing his eyes. Nevertheless, counsel did not raise this issue until after the court dismissed two alternate jurors, the trial had concluded, and the jury entered its verdict. Thus, Rivera has waived his juror misconduct claims. The district court did not abuse its discretion by denying Rivera's motion for a new trial.

*Rivera, supra,* 295 F.3d at 470–71.

In *United States v. Desir,* 273 F.3d 39, 43 (1st Cir.2001), the court noted:

Moreover, we have previously held that a defendant who has knowledge of juror misconduct or bias at the time of trial waives such a claim by failing to raise it until after trial. *See United States v. Costa,* 890 F.2d 480, 482 (1st Cir.1989). Otherwise, "[a]ny other rule would allow defendants to sandbag the court by remaining silent and gambling on a favorable verdict, knowing that if the verdict went against them, they could always obtain a new trial by later raising the issue of juror misconduct." *Id.*

*See also United States v. Gootee,* 34 F.3d 475, 479 (7th Cir.1994); *United States v. Breit,* 712 F.2d 81, 83 (4th Cir. 1983) (observing that "[a] defendant who remains silent about known juror misconduct—who, in effect, takes out an insurance policy against an unfavorable verdict—is toying with the court."); *United States v. Dean,* 667 F.2d 729, 734 (8th Cir.) *(en banc)* (untimely notification of juror misconduct waives right to new trial even where prejudice shown), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *Gray v. Hutto,* 648 F.2d 210, 211–12 (4th Cir.1981); *Wilson v. United States,* 663 A.2d 558, 561 n. 4 (D.C.1995); *Parker v. State,* 249 Ga.App. 509, 548 S.E.2d 475, 478 (2001) (holding that trial counsel who knew of *possible* juror misconduct during trial waived issue by failing to bring it to trial court's attention); *People v. Walsh,* 222 A.D.2d 735, 634 N.Y.S.2d 858, 861 (1995).[3]

■ The failure of *voir dire* to disclose potentially disqualifying information does not, in all cases, entitle the defendant to a new trial. When a defendant is aware that a prospective juror has failed to disclose information that is sought by *voir dire,* and fails to alert the trial court of the fact until after the verdict, he has waived the right to later complain.[4] We find

---

3. *Cf. United States v. Jones,* 597 F.2d 485, 488 n. 3 (5th Cir.1979), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 729, 62 L.Ed.2d 728 (1980), wherein the Fifth Circuit observed:

 The rule requiring a showing that the evidence of jury tampering is newly discovered and the rule of waiver established by the above cited cases are not aimed necessarily at discovering a defendant's complicity in the improper communication to the jury. The policies behind both rules fully encompass any knowledge possessed by the defendant before the verdict whether it be innocent or not. Such knowledge should be disclosed to the trial judge before the verdict so that an attempt can be made to salvage the trial by ridding the jury of prejudicial influences.

4. Scott asserts that the trial court's conclusion, that he knew about the non-disclosure during trial, is based on "mere speculation." Given defense counsel's explicit acknowledgment that he should have brought even a suspicion of juror misconduct to the trial court's attention, we find no merit in this contention.

no abuse of discretion in the trial court's denial of Scott's motion for a new trial.

### 2. Whether the evidence is sufficient to sustain Scott's conviction.

Scott concedes that the evidence is sufficient to sustain his convictions for possession of the controlled substances, but asserts that the evidence is insufficient to sustain his convictions for possession with intent to distribute. He contends that the State has failed to prove that "all or substantially all of the substances were in fact cocaine, heroin and marijuana[,]" resting his challenge on the fact that the chemist analyzed only trace, rather than gross, amounts of the substances that were recovered.

### Preservation

■ Initially, the State asserts that appellant has not preserved this question, pointing out that defense counsel failed to raise the issue of the forensic chemist's testimony until after the trial court had instructed the jury. While counsel moved for judgment of acquittal at the end of the State's case, and again at the close of the evidence, and argued his grounds, he did not argue the point now made on appeal until just before the jury began to deliberate.

The following transpired:

[DEFENSE COUNSEL]: Yes, Your Honor. The State has not and still has not and there's been no evidence to establish demand control [sic] over what was tak[en] from the car.

THE COURT: Same argument that you made before?

[DEFENSE COUNSEL]: Yes, Your Honor. The testimony has been he was in the presence of Mr. Bowen all day. The testimony by Ms. Young is that there was no activity involving the black Chevy Malibu outside. The State has not established demand control [sic] over the seized evidence, plain and simply. They haven't established knowledge.... They've only established if the State's witnesses

are to be believed. Mere proximity ... is not good enough. The State has not made a prima facie case of any of the seized evidence.

Only after the court instructed the jury did the defense question the evidentiary foundation that all of the material seized was contraband:

[DEFENSE COUNSEL]: Yes, Your Honor, can I just be heard on the motion for judgment of acquittal on one other matter?

THE COURT: Sure.

[DEFENSE COUNSEL]: Thank you. Defense would be making a motion on the judgment of acquittal on the fact that the case laws [sic] requires something a little bit more than trace amounts to be tested when we're dealing with amounts exceeding 20 pills.

Even though the point was not raised until the eleventh hour, we are satisfied that, on these facts, the issue of evidentiary sufficiency has been preserved. In *Pugh v. State,* 103 Md.App. 624, 650, 654 A.2d 888 (1995), the defense moved for a judgment of acquittal at the close of the State's case, but failed to renew that motion at the close of the evidence, choosing instead to renew its motion after the court instructed the jury. We held that Pugh's motion was untimely because he had not renewed his motion "at the close of all the evidence." *Id.*; Maryland Rule 4–324(a). In the case *sub judice,* the defense did renew its motion at the close of all the evidence, and, with leave of the trial court, further elaborated on that motion after the jury had been instructed.

### The Evidence

■ In reviewing the sufficiency of the evidence to support a criminal conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). Our role on appeal is not to

retry this case. *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336 (1994). Determinations of credibility lie within the province of the trier of fact. *See Pinkney v. State,* 151 Md.App. 311, 326, 827 A.2d 124 (2003).

The State adduced sufficient evidence to support Scott's convictions. "Maryland has long held that there is no difference between direct and circumstantial evidence." *Hebron v. State,* 331 Md. 219, 226, 627 A.2d 1029 (1993). *See State v. Smith,* 374 Md. 527, 534, 823 A.2d 664 (2003). In *Robinson v. State,* 348 Md. 104, 112–14, 702 A.2d 741 (1997), the Court, collecting cases, noted "that the great weight of authority from other state and federal courts recognizes that circumstantial or indirect evidence may be sufficient, standing alone, to establish the nature of a controlled substance."[5] *See United States v. Meeks,* 857 F.2d 1201, 1204 (8th Cir.1988) (stating that "[p]roof of the existence of a controlled substance need not be by direct evidence.").

Where the State introduced evidence that portions of the substances were shown by analysis to be cocaine, heroin, or marijuana, the jury was entitled to infer, circumstantially, the identity and nature of the remainder of the contraband recovered from the same source at the same time. The circumstantial case is bolstered by the observations of Detective Lunsford, whose account the jury was free to believe or disbelieve, who stated that he witnessed what, in his opinion, he considered to be a narcotics transaction. He saw Scott open the trunk of the Malibu, receive currency from a buyer, and hand over to the buyer small items "consistent in size and shape of street level packaged narcotics." That testimony, added to the testimony of the forensic chemist that samples from the suspected contraband tested positive for the narcotics in question, provided evidence from which the jury could infer both possession and possession with intent to distribute.

---

**5.** The Court in *Robinson* also held that a lay witness could not rationally identify a substance as crack cocaine on the basis of visual inspection alone. *Robinson, supra,* 348 Md. at 127–29, 702 A.2d 741.

### 3. Whether the trial court abused its discretion by denying a motion to recuse.

■■ We come now to Scott's assertion that the trial judge abused his discretion by denying a defense motion for recusal. We disagree and explain. We review the trial judge's decision on a motion to recuse for abuse of discretion. *Cicoria v. State,* 89 Md.App. 403, 427, 598 A.2d 771 (1991), *aff'd,* 332 Md. 21, 629 A.2d 742 (1993).

The recusal issue arose during the pre-trial suppression hearing. The prosecutor had examined Lunsford regarding the detective's education and experience, and counsel and the court were discussing the evidentiary ramifications of the Court of Appeals' decision in *Ragland v. State,* 385 Md. 706, 870 A.2d 609 (2005). The transcript discloses that during this discussion the trial court stated:

> THE COURT: The purpose of Ragland isn't to release all the drug dealers back out on the street, or alleged drug dealers back out on the street of Baltimore. The purpose of the opinion is to advise the defense of expert witnesses and that you now have received that notice.

After a recess, defense counsel voiced his concern about the trial judge's remarks regarding *Ragland.* The transcript reflects the following:

> [DEFENSE COUNSEL]: ... I had basically objected to the Court receiving Officer Lunsford as an expert for the State's failure to provide notice.... The Court's response was it is not the purpose of Ragland, if I remember the Court's response correctly, to put drug dealers back on the street.
>
> THE COURT: Or alleged drug dealers back on the street is what I said, or alleged drug dealers back on the street.
>
> \* \* \*
>
> [DEFENSE COUNSEL]: I do not remember the second half of that.
>
> \* \* \*

In either case, it is [the] Defense position that the Court's partiality is contained [sic] for whatever reason whether it's upon Defense motion, or perhaps would it, the knowledge that it brought to this case before it was called for the motion to suppress. We would be making a motion that the Court would excuse itself on the basis of that statement. THE COURT: Denied. Check your record and the record speaks for itself[.]

In *Chapman v. State,* 115 Md.App. 626, 631–32, 694 A.2d 480 (1997), we said:

"It is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge." *Jefferson–El v. State,* 330 Md. 99, 105, 622 A.2d 737 (1993). The accused has a right to a trial in which the judge is not only impartial and disinterested, but who also has the appearance of being impartial and disinterested. *Scott v. State,* 110 Md.App. 464, 486, 677 A.2d 1078 (1996). Maryland Rule 16–813, Canon 3C(1)(a) of the Maryland Code of Judicial Conduct, reflects this principle and provides:

(1) A judge should not participate in a proceeding in which the judge's partiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .

A party attempting to demonstrate "that a judge is not impartial or disinterested has a high burden to meet." *Scott,* 110 Md.App. at 486, 677 A.2d 1078. "This is so because there is a strong presumption in Maryland, and elsewhere, that judges are impartial participants in the legal process, whose duty to preside when qualified is as strong as their duty to refrain from presiding when not qualified." *Jefferson–El,* 330 Md. at 107, 622 A.2d 737 (citations omitted).

To overcome the presumption of impartiality, the party requesting recusal must prove that the trial judge has "a

personal bias or prejudice" concerning him or "personal knowledge of disputed evidentiary facts concerning the proceedings." *Boyd [v. State,* 321 Md. 69, 80, 581 A.2d 1 (1990) ]. Only bias, prejudice, or knowledge derived from an extrajudicial source is "personal." Where knowledge is acquired in a judicial setting, or an opinion arguably expressing bias is formed on the basis of information "acquired from evidence presented in the course of judicial proceedings before him," neither that knowledge nor that opinion qualifies as "personal." *Boyd,* 321 Md. at 77, 581 A.2d 1 (quoting *Craven v. U.S.,* 22 F.2d 605, 607–08 (1st Cir.1927)); *[Doering v. Fader,* 316 Md. 351, 356, 558 A.2d 733 (1989)].

*Id.* at 107, 622 A.2d 737 (some citations omitted).

A party attempting to demonstrate that a judge does not have the appearance of disinterestedness or impartiality carries a "slightly lesser burden." *Scott,* 110 Md.App. at 487, 677 A.2d 1078. "Appearance of disinterestedness or impartiality is determined by 'examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.' " *Id.* at 487, 677 A.2d 1078 (quoting *Jefferson–El,* 330 Md. at 108, 622 A.2d 737 (citing *Boyd v. State,* 321 Md. 69, 86, 581 A.2d 1 (1990))). Finally, "[t]he recusal decision ... is discretionary and the exercise of that discretion will not be overturned except for abuse." *Jefferson–El,* 330 Md. at 107, 622 A.2d 737.

(footnote omitted).

■ We discern no abuse of the trial court's discretion in its denial of the motion for recusal, and conclude that the court's discussion of *Ragland* does not betray a "personal" bias that would compel recusal. Again, "[o]nly bias, prejudice, or knowledge derived from an extrajudicial source is 'personal.' " *Id.* at 632, 694 A.2d 480 (quoting *Jefferson–El,* 330 Md. at 107, 622 A.2d 737). We note as well that the trial judge's remarks occurred outside the presence of the jury.

Much of the concern about an otherwise inappropriate judicial act or remark is neutralized by the absence of the jury. The threat of prejudice is greatest when a judge overpowers a jury, *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir.1979), or when she unduly interferes with counsel's conduct of the case. *United States v. Slone*, 833 F.2d 595, 598 (6th Cir.1987). [The defendants] must overcome a high hurdle here, since the jury was not present when the court uttered the allegedly prejudicial phrases and no undue interference occurred.[6]

*United States v. Morrow*, 977 F.2d 222, 225 (6th Cir.1992), cert. denied, 508 U.S. 975, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993).

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED;**

**COSTS ASSESSED TO APPELLANT.**

---

**6.** We do not suggest that the court's comment was inappropriate.